NO. 4-07-0864          Filed 5/13/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|      Plaintiff-Appellee, | ) | Circuit Court of |
|      v. | ) | Sangamon County |
| NED L. ROBERSON, | ) | No. 05CF1388 |
|      Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Leo J. Zappa, Jr., |
| | ) | Judge Presiding. |

_____

JUSTICE APPLETON delivered the opinion of the court:

In June 2007, a jury convicted defendant, Ned L. Roberson, of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2004)) and indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2004)).  In August 2007, the trial court sentenced him to concurrent terms of 2 years' probation with 180 days in jail on each conviction.

Defendant appealed, arguing (1) the trial court erred in failing to question the jurors during voir dire about their understanding of defendant's right to not testify; (2) the court erred in granting the State's motion in limine barring evidence the victim had made prior false accusations; (3) the court erred in allowing the State to present propensity evidence of an alleged prior sexual assault; (4) the State failed to prove beyond a reasonable doubt defendant was five years older than the victim; (5) the written judgment order should be corrected to

reflect the sentence pronounced by the court; and (6) defendant should not be required to pay the State's Attorney fee as costs of appeal. In February 2009, this court affirmed as modified and remanded with directions. People v. Roberson, No. 4-07-0864 (February 18, 2009) (unpublished order under Supreme Court Rule 23).

The Supreme Court of Illinois denied defendant's petition for leave to appeal but issued a supervisory order (People v. Roberson, 233 Ill. 2d 588, 914 N.E.2d 488 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal) (No. 108125)) directing this court to vacate our order and to reconsider in light of People v. Glasper, 234 Ill. 2d 173, 917 N.E.2d 401 (2009). In accordance with the supreme court's directions, we vacated our prior judgment and reconsider in light of Glasper to determine whether a different result is warranted. We again affirm as modified and remand with directions.

I. BACKGROUND

According to H.G.'s testimony, on October 4, 2005, defendant asked her to help him "move a chest from his house." H.G. said she would check with her mother. H.G. was 16 years of age and had known defendant since she was in the fifth grade. Defendant had worked as a teacher's aide at her schools. H.G.'s mother said she wanted to speak with defendant first. H.G.

called her mother from defendant's cell phone.  H.G. heard defendant say he knew her grandma, cousins, and sister.  H.G.'s mother gave her permission, provided H.G. came home in half an hour.

As H.G. walked up the stairs to defendant's apartment, defendant slapped her "butt."  Once in defendant's apartment, he began asking H.G. to have sex.  Although she said no, defendant continued to ask.  When H.G. walked to the door, defendant asked for a hug.  H.G. hugged defendant because she was attempting to leave.  H.G. testified, "I was trying to get out of there, and he pulled me in closer and grabbed my butt again and asked me again to have sex with him."  When H.G. told defendant she wanted to leave, defendant said he knew she had time and did not have to be home yet.

H.G. started down the stairs, but defendant got in front of her and told her to hug him like she meant it.  Again, H.G. hugged defendant because she was attempting to leave.  H.G. testified, "I hugged him, but I tried to keep my body away from him, and he pulled me closer again."  H.G. again told defendant she wanted to leave.

Defendant followed H.G. to her car.  H.G. started her vehicle, but defendant reached inside.  Defendant asked H.G. to have sex with him several more times, saying his "dick was bigger than her boyfriend's."  She testified defendant told her if she

- 3 -

would not have sex with him she should at least "let him see." When H.G. refused, defendant reached in the car and grabbed H.G.'s crotch outside her pants.

According to H.G., defendant told her this was going to be their "secret."  H.G. testified defendant "made me promise that I wouldn't tell anybody."  H.G. promised defendant she would not say anything because she wanted to leave.  H.G. drove away and went straight home.

H.G.'s mother testified to her phone conversation with defendant regarding defendant's request that H.G. help him move. H.G.'s mother also testified defendant assured her he knew her family members and that H.G. would be home shortly.

H.G.'s testimony was also corroborated by her ability to provide an accurate description of defendant's apartment, which defendant testified H.G. had never been inside.

Defendant testified he had known H.G. for six to eight years and that they got "along okay."  On October 4, 2005, defendant was sitting in his vehicle at Shop N Save grocery store when H.G. approached him.  She asked defendant if he would ask her mother if she could help him move.  Defendant replied "I've done moved it."  H.G. called her mother and asked defendant to speak with her.  Defendant testified he spoke with H.G.'s mother and told her "he was pretty much done with moving."  Defendant told H.G.'s mother H.G. was too small and he did not need her

help.

According to defendant's testimony, H.G. then asked defendant if he could "get [her] some weed." When defendant told her no, she "looked at [him] real funny and got in the car and drove off." Defendant testified, "I guess she could have been angry."

In June 2007, a jury convicted defendant of aggravated criminal sexual abuse and indecent solicitation of a child. The trial court sentenced defendant as stated. Defendant filed motions to reconsider sentence, reconsider the denial of defendant's posttrial motions, and a motion in arrest of judgment, all of which the court denied.

We affirmed as modified and remanded with directions (People v. Roberson, No. 4-07-0864 (February 18, 2009) (unpublished order under Supreme Court Rule 23)), and the supreme court denied defendant's petition for leave to appeal but directed this court to vacate our judgment and to reconsider in light of Glasper.

II. ANALYSIS

A. Rule 431(b)

As a threshold matter, we note our prior order in this case relied on this court's reasoning in People v. Stump, 385 Ill. App. 3d 515, 896 N.E.2d 904 (2008). However, following its decision in Glasper, the supreme court issued a supervisory order

- 5 -

therein (<u>People v. Stump</u>, 233 Ill. 2d 592, 914 N.E.2d 490 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal) (No. 107508)) directing this court to vacate its opinion and reconsider its decision in light of <u>Glasper</u>--despite <u>Glasper</u>'s application of prior Rule 431 and <u>Stump</u>'s application of the amended rule.

On appeal in the instant case, defendant initially argues he is entitled to a new trial because the trial court failed to comply with Rule 431(b). Specifically, defendant contends the court erred by failing to allow the venire members an opportunity to respond to or be questioned about their understanding of defendant's right to not testify as required by Rule 431(b). See <u>People v. Zehr</u>, 103 Ill. 2d 472, 477-78, 469 N.E.2d 1062, 1064 (1984).

## 1. <u>Forfeiture</u>

In this case, defendant's trial counsel did not object at the time of the trial court's error. In addition, defendant's posttrial motion did not allege the court failed to comply with Rule 431(b). As a result, the issue has been forfeited. See <u>People v. Hestand</u>, 362 Ill. App. 3d 272, 279, 838 N.E.2d 318, 324 (2005). Defendant, however, argues the court's failure to comply with Rule 431(b) constitutes plain error affecting his substantial right to a fair trial by an impartial jury.

## 2. <u>Plain-Error</u> or <u>Harmless-Error</u> <u>Analysis</u>

A plain-error analysis applies where the defendant fails to make a timely objection in the trial court, while a harmless-error analysis applies where the defendant timely objects to the error. People v. Johnson, 388 Ill. App. 3d 199, 203, 902 N.E.2d 1265, 1268 (2009). Because defendant failed to preserve the trial court's error, we analyze the error under the plain-error doctrine.

### 3. Plain-Error Analysis

A reviewing court may disregard a defendant's forfeiture and review the issue under the plain-error doctrine to determine whether reversal is required. People v. Lewis, 234 Ill. 2d 32, 42, 912 N.E.2d 1220, 1226 (2009). The plain-error doctrine allows a reviewing court to consider forfeited error when (1) the evidence is closely balanced or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. People v. Walker, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009). Under either prong of the plain-error analysis, however, the defendant has the burden of persuasion. Lewis, 234 Ill. 2d at 43, 912 N.E.2d at 1227.

We note that defendant does not argue that the evidence was closely balanced. Instead, defendant contends that the error was so serious that it deprived him of a fair trial. As a result, we confine our review to the second prong of the plain-

- 7 -

error analysis.  See People v. Alexander, 396 Ill. App. 3d 563, 574, 919 N.E.2d 1016, 1026 (2009).  However, before we can determine whether defendant was deprived of a fair trial, we must first determine whether any error occurred.  People v. Piatkowski, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007).

### 4. Standard of Review

"The supreme court's rules are not aspirational; rather, they have the force of law."  People v. Young, 387 Ill. App. 3d 1126, 1127, 903 N.E.2d 434, 435 (2009), citing Bright v. Dicke, 166 Ill. 2d 204, 210, 652 N.E.2d 275, 277-78 (1995).  This court reviews de novo a trial court's compliance, or lack thereof, with a supreme court rule.  Young, 387 Ill. App. 3d at 1127, 903 N.E.2d at 435.

### 5. Rule 431(b)

In Zehr, the Supreme Court of Illinois held a trial court erred during voir dire by refusing defense counsel's request to ask questions about (1) the State's burden of proof, (2) defendant's right to not testify, and (3) the presumption of innocence.  Zehr, 103 Ill. 2d at 477-78, 469 N.E.2d at 1064.

The supreme court amended Rule 431(b) to assure compliance with its decision in Zehr.  Adopted March 21, 2007, and effective May 1, 2007, the rule now reads as follows:

"(b) The court shall ask each potential

- 8 -

juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry <u>shall provide</u> each juror an opportunity to respond to specific questions concerning the principles set out in this section."  (Emphases added.)  Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

The committee comments provide as follows:

"The new language is intended to ensure compliance with the requirements of <u>People v.</u>

<u>Zehr</u>, 103 Ill. 2d 472[, 469 N.E.2d 1062]

(1984). It seeks to end the practice where

the judge makes a broad statement of the

applicable law followed by a general question

concerning the juror's willingness to follow

the law." 177 Ill. 2d R. 431(b), Committee

Comments, at lxxix.

As of May 1, 2007, the plain language of Rule 431(b)

requires a trial court to <u>sua</u> <u>sponte</u> question each potential

juror as to whether he understands and accepts the <u>Zehr</u> princi-

ples in a manner that allows each juror an opportunity to re-

spond. Compliance with Rule 431(b) is mandatory. <u>People v.</u>

<u>Owens</u>, 394 Ill. App. 3d 147, 152, 914 N.E.2d 1280, 1284 (2009).

As the <u>voir</u> <u>dire</u> in this case occurred in June 2007, after the

amendment became effective, the court was required to comply with

the rule as amended May 1, 2007.

### 6. <u>Admonitions</u> <u>and</u> <u>Instructions</u>

In this case, the trial court instructed prospective

jurors on three of the four <u>Zehr</u> principles before selecting

panelists for questioning. At the beginning of <u>voir</u> <u>dire</u>, prior

to the jurors being sworn in, the court addressed the pool as

follows:

"Under the law, the [d]efendant <u>is</u> <u>pre-</u>

<u>sumed</u> to be <u>innocent</u> of the charges against

- 10 -

him, and this presumption remains with him throughout every stage of the trial and during your deliberations on the verdict. This presumption of innocence is not overcome unless from all evidence in the case you are convinced beyond a reasonable doubt that the [d]efendant is guilty.

The <u>State</u> <u>has</u> <u>the</u> <u>burden</u> <u>of</u> <u>proving</u> <u>the</u> <u>guilt</u> <u>of</u> <u>the</u> <u>[d]efendant</u> <u>beyond</u> <u>a</u> <u>reasonable</u> <u>doubt</u>, and this burden remains on the State throughout the trial. The <u>[d]efendant</u> <u>is</u> <u>not</u> <u>required</u> <u>to</u> <u>prove</u> <u>his</u> <u>innocence</u>, <u>nor</u> <u>is</u> <u>[defendant]</u> <u>required</u> <u>to</u> <u>present</u> <u>any</u> <u>evidence</u> on his behalf. He may rely on the presumption of innocence." (Emphases added.)

During <u>voir</u> <u>dire</u>, the trial court asked the first panel of prospective jurors the following:

"[D]o all of you understand that a person accused of a crime is presumed to be innocent of the charges against him, and this presumption of innocence stays with the [d]efendant throughout the trial and is not overcome unless from all the evidence you believe the State has proved his guilt beyond

- 11 -

a reasonable doubt?  That means the State has the burden of proving the [d]efendant's guilt beyond a reasonable doubt, the [d]efendant does not have to prove his innocence, the [d]efendant does not have to present any evidence on his own behalf.

Does anyone *** have any disagreements with those principles of law?  If you do, raise your hand."  (Emphasis added.)

Four jurors were selected from the first panel.  The second panel of prospective jurors were questioned as follows:

"A person accused of a crime is presumed to be innocent of the charges against him, and that presumption of innocence stays with him throughout the trial and is not overcome unless from all the evidence you believe the State proved his guilt beyond a reasonable doubt, and that means that the State has the burden of proving the [d]efendant's guilt beyond a reasonable doubt. The [d]efendant does not have to prove his innocence. The [d]efendant does not have to present any evidence on his own behalf.

Does anyone *** have a disagreement with

- 12 -

these principles of law?  If you do, raise your hand."  (Emphasis added.)

Seven jurors were selected from the second panel.  The court addressed the next panel of prospective jurors as follows:

"Under the law, the [d]efendant is presumed innocent of the charges against him, and that presumption remains with him throughout every stage of this trial and during your deliberations.  This presumption of innocence is not overcome unless from all the evidence in the case[,] you are convinced beyond a reasonable doubt that the [d]efendant is guilty.

The State has the burden of proving the guilt of the [d]efendant beyond a reasonable doubt, and this burden remains on the State throughout the trial. The [d]efendant is not required to prove his innocence, nor is he required to present any evidence on his own behalf.  He may rely on his presumption of innocence."  (Emphasis added.)

The court then addressed the final panel as follows:

"A person accused of a crime is presumed to be innocent of the charge against him, and

- 13 -

this presumption of innocence stays with him throughout the trial and is not overcome unless from all the evidence you believe the State proved his guilt beyond a reasonable doubt, and that means that the State in this case has the burden of proving the [d]efendant's guilt beyond a reasonable doubt.

The [d]efendant does not have to prove his innocence.  He does not have to present any evidence on his own behalf.

Anyone *** have any disagreement with these principles of law; if so, raise your hands."  (Emphasis added.)

One juror and two alternates were selected from the final panel.

Prior to deliberations, the jury also received Illinois Pattern Jury Instructions, Criminal, No. 2.03 (4th ed. 2000) (hereinafter IPI Criminal 4th), regarding the presumption of innocence, the State's burden of proof, and that defendant was not required to prove his innocence.  However, the jury was not given IPI Criminal 4th No. 2.04 regarding defendant's decision not to testify.

Thus, the record shows the trial court did not fully comply with Rule 431(b) because it only questioned prospective

- 14 -

jurors about three of the four <u>Zehr</u> principles.  Specifically, the court did not ask prospective jurors whether they understood and accepted that defendant's decision not to testify cannot be held against him.  We hold that the court's failure to strictly comply with the rule was error.

### 7. <u>Does the Error Require Automatic Reversal</u>

Having found error, we must now determine whether the error was so serious that it affected the fairness of defendant's trial.

In this case, none of the jurors selected were specifically asked about their understanding of defendant's right not to testify.  However, defendant <u>testified</u> at trial.  Because defendant testified, the question of whether the jury was properly admonished concerning his right not to testify is a nonissue.  See <u>People v. Brooks</u>, 175 Ill. App. 3d 136, 143 n.1, 529 N.E.2d 732, 737 n.1 (1988) (First District, "Defendant testified at trial, so the question of his right not to testify is not an issue in this case").  We note that even if a juror was inclined to hold defendant's decision not to testify against him, any potential bias in that regard was alleviated when defendant took the stand and testified.

In applying <u>Glasper</u> to the facts of this case, we find the trial court's error was not of such magnitude to warrant a new trial.  In <u>Glasper</u>, the supreme court addressed whether a

- 15 -

trial court's failure to comply with prior Rule 431(b) requires a reviewing court to presume prejudice and automatically reverse a defendant's conviction. Glasper, 234 Ill. 2d at 189, 917 N.E.2d at 411-12. While the court held the trial court erred by not fully complying with Rule 431(b), it declined to find that a violation of Rule 431(b) is per se reversible error. Glasper, 234 Ill. 2d at 194, 917 N.E.2d at 414. Instead, the court found that automatic reversal was only required when an error was found to be "'structural,' i.e., a systemic error [that] serves to 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.'" Glasper, 234 Ill. 2d at 197-98, 917 N.E.2d at 416, quoting People v. Herron, 215 Ill. 2d 167, 186, 830 N.E.2d 467, 479 (2005).

The supreme court found that a trial court's failure to question a venire regarding a defendant's failure to testify does not involve a fundamental right or a constitutional protection. Glasper, 234 Ill. 2d at 193, 917 N.E.2d at 413. Rather, the court found the error in Glasper "involves a right made available only by rule of [the Illinois Supreme Court]." Glasper, 234 Ill. 2d at 193, 917 N.E.2d at 413-14. The court also stated that "[t]he violation of a [s]upreme [c]ourt [r]ule does not mandate reversal in every case." Glasper, 234 Ill. 2d at 193, 917 N.E.2d at 414. As a result, the error was not "structural" but instead (given defense counsel's request for admonition and apparent

- 16 -

objection) subject to a harmless-error analysis. Glasper, 234 Ill. 2d at 200, 917 N.E.2d at 418.

We recognize the supreme court did not consider whether amended Rule 431 would have affected the outcome of Glasper. See Glasper, 234 Ill. 2d at 200, 917 N.E.2d at 418 (emphasizing "that this holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule"). However, we find the distinction between the two versions of the rule is without a difference as applied here and does not preclude application of the Glasper analysis to this case. See People v. Magallanes, 397 Ill. App. 3d 72, 92, 921 N.E.2d 388, 405 (2009) (First District, finding no "quantitative or qualitative difference between the trial court failing to admonish jurors when requested to do so, as in Glasper, and when the trial court fails to admonish jurors under the amended rule"); see also People v. Amerman, 396 Ill. App. 3d 586, 594-95, 919 N.E.2d 1068, 1075 (2009) (Third District, finding the Glasper analysis applied to a plain-error analysis involving the amended version of the rule); Alexander, 396 Ill. App. 3d at 575, 919 N.E.2d at 1026 (Third District, finding Glasper's rationale applicable to the second prong of the plain-error analysis).

After considering the issue in light of Glasper, we find the trial court did not fully comply with Rule 431(b) and

that failure to comply constituted error.  However, because defendant testified, we cannot say the court's failure to question jurors about defendant's right not to testify was so serious that it affected the fairness of his trial.  See <u>Magallanes</u>, 397 Ill. App. 3d at 99, 921 N.E.2d at 412.  As a result, we conclude the court's error did not amount to plain error, <u>i.e.</u>, the court's error was harmless beyond a reasonable doubt.

## B. State's Motion <u>In</u> <u>Limine</u>

Defendant next argues the trial court erred in granting the State's motion <u>in</u> <u>limine</u> barring evidence the victim had made prior false accusations of sexual assault against other teachers.  Specifically, defendant contends the evidence showed the victim had a motive to lie and possessed an improper interest in or bias against defendant because he was a teacher's assistant.  Defendant maintains the evidence sought to be introduced would show the victim's bias against those in authority, like defendant.

### 1. <u>Motion</u> <u>In</u> <u>Limine</u>

During defense counsel's opening statement, counsel told the jury "you may hear evidence *** of accusations against other teachers, persons, about this troubled youth."  The State then filed a motion <u>in</u> <u>limine</u> requesting defendant be barred from presenting any evidence or cross-examining any witness concerning alleged prior false allegations of sexual abuse made by the

victim.

Defendant argued the evidence showed motive and bias to testify falsely against defendant and also to show the victim was a troubled youth.  The State argued that even if the victim previously made false allegations of sexual abuse against another person, such evidence is not admissible for impeachment of the victim unless defendant can show the allegations demonstrate bias, interest, or prejudice concerning defendant.

The trial court ruled that unless defendant could connect such evidence to a bias or interest against defendant, the evidence would not be permitted.

### 2. Standard of Review

A trial court's evidentiary determinations regarding a motion in limine will not be disturbed absent an abuse of discretion.  In re Leona W., 228 Ill. 2d 439, 460, 888 N.E.2d 72, 83 (2008).  A party forfeits review of his challenge to the trial court's granting of a motion in limine when he fails to make an offer of proof.  People v. Evans, 373 Ill. App. 3d 948, 966, 869 N.E.2d 920, 937 (2007) ("[f]ailing to make an adequate offer of proof results in a [forfeiture] of the issue on appeal").

While a formal offer of proof is generally required, an informal offer of proof consisting of counsel's summary of what the proposed evidence might prove may be sufficient if specific and not based on speculation or conjecture.  People v. Tabb, 374

Ill. App. 3d 680, 689, 870 N.E.2d 914, 923-24 (2007) (First
District).

### 3. Defendant's Offer of Proof

Following the presentation of the State's witnesses,
defense counsel represented that he had subpoenaed witnesses who
would have testified H.G.

> "made false accusations to other teachers,
> that she in fact caused, at least that's what
> it appears to me, one teacher to quit after a
> false allegation, that she has e-mailed, did
> e-mail another teacher a request for sex on
> an e-mail, that she has been disruptive in
> school, that she is not permitted to be in
> the hallway[.] *** That would be the
> witnesses I would present."

Defendant's counsel then informed the trial court that
he called off those witnesses because he did not want to "waste
judicial time" bringing them in to testify and making an offer of
proof. Instead, he asked the court to accept his representation
of their testimony as to the offer of proof. The court responded
by stating the following: "Sure, to preserve your record. I've
already made my ruling, and I appreciate you putting that on the
record." However, the court did not reverse its previous ruling
that the evidence would not be permitted unless defense counsel

- 20 -

could connect the evidence to a bias against <u>this</u> defendant. Defendant preserved the issue by including it in his posttrial motion.

### 4. <u>No</u> <u>Error</u> <u>in</u> <u>Excluding</u> <u>Evidence</u>

Here, the State argues defense counsel's offer of proof was not sufficiently specific. We agree. Cross-examination to show bias, interest, or motive to testify falsely is a matter of right. <u>People v. Triplett</u>, 108 Ill. 2d 463, 475, 485 N.E.2d 9, 15 (1985). However, to be admissible, "'the evidence used must not be remote or uncertain.'" <u>People v. Cookson</u>, 215 Ill. 2d 194, 215, 830 N.E.2d 484, 496 (2005), quoting <u>People v. Bull</u>, 185 Ill. 2d 179, 206, 705 N.E.2d 824, 838 (1998).

Here, defense counsel's offer of proof neither provided the names of the potential witnesses nor explicitly stated what their testimony would reveal. In addition, the offer of proof did not indicate when or to whom the alleged prior false allegations were made. Further, defense counsel's offer of proof did not demonstrate H.G. possessed any potential bias against or motive to lie about abuse by <u>this</u> defendant. See <u>Cookson</u>, 215 Ill. 2d at 218, 830 N.E.2d at 498 (supreme court finding sexual-abuse accusations were properly excluded absent a demonstration of improper interest, bias, or motive to lie about the defendant). Accordingly, defendant failed to properly connect the allegations to a bias or interest against him.

We find the trial court correctly concluded the evidence does not establish H.G.'s bias against this defendant. Further, the speculative nature of the evidence made it inadmissible to show H.G.'s bias against defendant. See Bull, 185 Ill. 2d at 206-07, 705 N.E.2d at 838. Given the State's argument at the hearing on the motion in limine and the court's ruling at that time, the informal offer of proof summarizing the proposed evidence was inadequate to demonstrate the error of which he now complains on appeal. As a result, we find no abuse of the court's discretion in excluding evidence relating to H.G.'s accusations against other teachers.

## C. Propensity Evidence

Defendant next contends the trial court erred when it allowed the State to present evidence of an alleged prior sexual assault. Specifically, defendant argues the propensity evidence was prejudicial as the incident was factually dissimilar and took place almost 10 years earlier.

According to Springfield police officer Dan Szabados' testimony, on November 18, 1997, he approached an improperly parked car. Szabados saw defendant and C.M. in the "backseat of the car putting their pants back on." Defendant stated he and C.M. were just kissing. Szabados testified defendant believed C.M. was 17 years of age. Szabados also testified he believed defendant was 31 years of age. Defendant was taken to the police

station and interviewed. Defendant's written and signed statement was read to the jury and admitted into evidence over defendant's objection. The statement provided as follows:

"I met [C.M.] sometime over the summer at Family Dollar on North Grand. I was driving by, and she flagged my down. She was with a tall black kid that was her next-door neighbor. I was with my friend, Anthony Grant. We talked a little bit at Family Dollar and then walked to the park. Nothing happened that night.

I saw [C.M.] again about a week later. We talked for about 15 minutes. We were by the Family Dollar. [C.M.] had told me she was 18 years old.

I met [C.M.] sometime before the fair. I met her at Family Dollar. She got in my car and [we] drove around a little bit. I drove out by the airport. We ended up at the Brown Bomber. We had talked about sex. I put a condom on, and she said she didn't like having sex with a condom. I kept it on, and when I started to penetrate, she said 'ouch' a couple of times. The act took a couple of

minutes, and then we stopped. *** I then drove her home and dropped her off at Family Dollar.

On two other occasions I drove [C.M.] to an area north of Browning Road. We kissed and hugged but didn't do anything else. I have only touched [C.M.'s] breasts twice, once at the Brown Bomber and tonight. Both times I was touching her outside her clothes. During our friendship[,] I began to wonder if she had told me the truth about her age. While we were at the park tonight, I knew she was probably not 18."

According to C.M.'s testimony, she was 14 years of age when defendant had sexual intercourse with her. C.M. testified defendant had sex with her at least three or four times in his apartment. C.M. also testified defendant had sex with her after the police caught them.

At common law, evidence of a defendant's other crimes or bad acts is inadmissible to prove the defendant's propensity to commit crime. People v. Reed, 361 Ill. App. 3d 995, 999, 838 N.E.2d 328, 331 (2005). However, under section 115-7.3(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3(b) (West 2004)), uncharged sex offenses are admissible to prove the

defendant's propensity to commit the charged sex offense if three conditions are met. Reed, 361 Ill. App. 3d at 999, 838 N.E.2d at 331-32, citing People v. Donoho, 204 Ill. 2d 159, 176, 788 N.E.2d 707, 718 (2003).

> "First, the uncharged sex offense must be 'otherwise admissible under the rules of evidence' [citation]--'otherwise' meaning but for the common-law prohibition of propensity evidence [citation]. 'Thus, evidence that is normally inadmissible, such as hearsay evidence, remains inadmissible.' [Citation.] Second, the 'probative value of the evidence' must outweigh its 'undue prejudice,' considering such factors as 'proximity in time' and 'the degree of factual similarity.' [Citation.] Third, the State must 'disclose the evidence *** at a reasonable time in advance of trial, or during trial if the court excuses pretrial notice on good cause shown.' [Citation.]" Reed, 361 Ill. App. 3d at 999, 838 N.E.2d at 332.

Here, defendant was accused of aggravated criminal sexual abuse and indecent solicitation of a child. Defendant's prior actions constitute an uncharged sex offense to which sec-

tion 115-7.3 pertains.  See 725 ILCS 5/115-7.3(a)(1) (West 2004) ("[Section 115-7.3] applies to criminal cases in which *** defendant is accused of *** aggravated criminal sexual abuse").  Therefore, evidence defendant previously committed aggravated criminal sexual abuse may be admissible for its bearing on any matter to which it is relevant.  See 725 ILCS 5/115-7.3(b) (West 2004).  Evidence is "relevant" if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  People v. Alsup, 373 Ill. App. 3d 745, 759, 869 N.E.2d 157, 170 (2007).

Despite defendant's claim to the contrary, the previous offense in this case had a threshold factual similarity to the charged offense in that both incidents involved (1) girls between 14 and 16 years of age, (2) defendant wanting to have sexual intercourse with the minor girls, (3) defendant fondling outside the minors' clothing, and (4) defendant assaulting the minors in his apartment.

Defendant also contends the previous incident is too remote as it took place almost 10 years before the charged incident.  However, the supreme court has found no abuse of discretion in admitting evidence of a sex offense that preceded the charged offense by 12 to 15 years.  Donoho, 204 Ill. 2d at 184, 788 N.E.2d at 722.

In addition, on January 5, 2007, the State filed a notice of intent to use evidence of other sex offenses pursuant to section 115-7.3. The jury trial began on June 12, 2007. Moreover, defendant does not claim to have received untimely notice of the intent to introduce evidence concerning the alleged previous offense.

Because the conditions set forth in section 115-7.3 have been met, evidence of defendant's uncharged act was admissible. As a result, we find no abuse of discretion in the trial court's decision to admit evidence of the prior, uncharged incident of aggravated criminal sexual abuse.

### D. Sufficiency of the Evidence

Defendant next argues the State's evidence was insufficient to prove beyond a reasonable doubt he was five years older than H.G. We disagree.

When considering a challenge to the sufficiency of the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." People v. Carpenter, 228 Ill. 2d 250, 265, 888 N.E.2d 105, 114 (2008). The appellate court's function is not to retry the defendant. People v. Slinkard, 362 Ill. App. 3d 855, 857, 841 N.E.2d 1, 3 (2005). A conviction will stand unless "the evidence is so unreasonable,

improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt."  People v. Wheeler, 226 Ill. 2d 92, 115, 871 N.E.2d 728, 740 (2007).

Due process requires that to sustain a conviction of a criminal offense, the State must prove defendant guilty of every element of an offense beyond a reasonable doubt.  People v. Cunningham, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004). However, the State may properly rely on inferences in proving those elements.  People v. Woodrum, 223 Ill. 2d 286, 308, 860 N.E.2d 259, 274 (2006).  Under section 12-16(d) of the Criminal Code of 1961, a person "commits aggravated criminal sexual abuse if [(1)] he or she commits an act of sexual penetration or sexual conduct with [(2)] a victim who was at least 13 years of age but under 17 years of age and [(3)] the accused was at least 5 years older than the victim."  720 ILCS 5/12-16(d) (West 2004).  In this case, the victim was 16 years old.  Thus, the State had to prove beyond a reasonable doubt defendant was at least 21 years old.

The State's evidence of defendant's age consisted of defendant's signed written statement from 1997 stating he was 31 years of age at the time the previous alleged abuse took place. Moreover, defendant's statement lists his date of birth as April 11, 1966, which would make defendant 39 years old as of the date of the current offense.  In addition, the State offered into

- 28 -

evidence a transcript of defendant's October 2005 interview with police. According to that transcript, defendant's birth date was April 11, 1966. In addition, H.G. testified she had known defendant since she was in the fifth grade when defendant was a teacher at her school. Testimony also showed defendant had worked at various schools in Springfield for 12 years. Defendant admitted knowing H.G. since she was in the fifth grade. According to defendant's testimony, he drove a car and went to a bar in 1997. Moreover, Szabados testified he determined defendant to be 31 years old in 1997.

In support of its argument, the State cites People v. Dalton, 91 Ill. 2d 22, 434 N.E.2d 1127 (1982). There, the supreme court addressed the rule established by the cases of Wistrand v. People, 213 Ill. 72, 79, 72 N.E. 748, 750 (1904), and People v. Rogers, 415 Ill. 343, 348, 114 N.E.2d 398, 401 (1953), that the State had to produce corroborating evidence of a defendant's admission of age when age is a necessary element of the corpus delicti of the offense. Dalton, 91 Ill. 2d at 27-30, 434 N.E.2d at 1130-31. The Dalton court held the defendant's statement of his date of birth was admissible without corroboration and overruled Wistrand and Rogers. Dalton, 91 Ill. 2d at 30, 434 N.E.2d at 1131. In its analysis, the supreme court noted that, in the cases of Wistrand and Rogers, it would have been inclined to hold the jury's observation of the defendants, who were con-

siderably over the statutory age, was sufficient corroboration. Dalton, 91 Ill. 2d at 29, 434 N.E.2d at 1130.

Here, the jury was also able to observe defendant as he testified. As a result, we find the jury's observation of defendant would allow it to determine whether the aforementioned information was sufficient to prove beyond a reasonable doubt defendant was five years older than H.G.

Accordingly, we find the State's evidence was sufficient to prove beyond a reasonable doubt the five-year-age-difference element.

### E. Correction of Written Sentencing Order To Conform to Pronounced Sentence

Defendant argues and the State concedes the trial court's written judgment order should be corrected to reflect the court sentenced defendant to concurrent terms of two years' probation. We agree.

When the oral pronouncement of the court and the written order conflict, the oral pronouncement of the court controls. People v. Smith, 242 Ill. App. 3d 399, 402, 609 N.E.2d 1004, 1006 (1993) (the oral pronouncement of the court is the judgment of the court while the written order merely serves as evidence of the court's judgment).

Here, the trial court's written order of the conditions of probation states defendant's sentence term is "4 years," from August 17, 2007, to August 17, 2011. The docket entry also

- 30 -

states defendant was sentenced to "4 years['] probation." However, at sentencing, the court stated, "I'm going to sentence you to two years['] probation, six months in the Sangamon County [j]ail." On the record before us, the written order is inconsistent with the court's oral pronouncement. As a result, the court's oral pronouncement is controlling. Accordingly, we find the written judgment order must be corrected to reflect that the court sentenced defendant to concurrent terms of two years' probation.

F. State's Attorney Fee for Appeal Costs

Defendant argues we should reject the State's request to assess costs to defendant for pursuing this appeal because the statute does not allow recovery from a defendant who has prevailed on appeal. We disagree.

It is well settled that "[t]he successful defense of any part of a criminal judgment challenged on appeal entitles the State to a per diem fee and costs for its efforts." People v. Smith, 133 Ill. App. 3d 613, 620, 479 N.E.2d 328, 333 (1985); see also People v. Nicholls, 71 Ill. 2d 166, 178-79, 374 N.E.2d 194, 199 (1978). Accordingly, because the State successfully defended a portion of the criminal judgment, including the day of oral argument, we find the State is entitled to its $75 statutory assessment. See People v. Williams, 235 Ill. 2d 286, 297, 920 N.E.2d 1060, 1066 (2009) ("because [the] defendant remained a

convicted defendant following the appellate court's resolution of his appeal, the court properly allowed the State's fee request").

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment as modified. We remand with directions for issuance of a modified written judgment order reflecting defendant's concurrent sentences of two years' probation. As part of our judgment, we grant the State its $75 statutory assessment against defendant as costs of this appeal.

Affirmed as modified and remanded with directions.

MYERSCOUGH, P.J., and POPE, J., concur.