# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***People v. McSwain*, 2012 IL App (4th) 100619**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK LOUIS McSWAIN, JR., Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0619 |
| Filed | January 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for child pornography, the trial court did not abuse its discretion in refusing to give the jury a dictionary definition of "lewd" when an instruction provided guidance on the issue, and defendant was not entitled to a new trial based on the admission of uncharged images found in his e-mail account, especially when those images were admitted for the limited purpose of showing defendant's knowledge and possession of the images at issue, but defendant's simultaneous possession of five images in a single e-mail constituted a single offense, and, therefore, four of his five convictions were vacated and the cause was remanded for the issuance of an amended sentencing judgment. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 08-CF-419; the Hon. Robert L. Freitag, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |

Counsel on Appeal

Michael J. Pelletier, Karen Munoz, and Jacqueline L. Bullard, all of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.

Justices Steigmann and Appleton concurred in the judgment and opinion.

## OPINION

¶ 1   In January 2010, a jury found defendant, Frank Louis McSwain, Jr., guilty of five counts of child pornography. In April 2010, the trial court sentenced him to 30 months' probation and 90 days in jail.

¶ 2   On appeal, defendant argues (1) he is entitled to a new trial based on the trial court's refusal of his proffered definition of "lewd" in light of jury questions, (2) he is entitled to a new trial based on the admission of uncharged images found in his e-mail account, and (3) four of his five convictions for child pornography must be vacated. We affirm in part, vacate in part, and remand with directions.

¶ 3                                I. BACKGROUND

¶ 4   In May 2008, a grand jury indicted defendant on five counts of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2008)), alleging that, with knowledge of the nature or content thereof, he possessed photographs of B.M., a minor under the age of 18, depicted or portrayed in a pose, posture, or setting involving a lewd exhibition of B.M.'s unclothed breasts. Defendant pleaded not guilty.

¶ 5   In January 2010, defendant's jury trial commenced. Jeff Stanford, a representative of Yahoo! Incorporated, testified the company hosts e-mail and instant messaging and stores images and photos. When a customer opens an e-mail account, the information is stored electronically on Yahoo's servers. A user's e-mails "are kept as long as the user retains them." Users can also create folders to store items. Stanford stated Yahoo cannot retrieve deleted e-mails.

¶ 6   Jasmine Harris testified she was 21 years old. In the summer of 2007, Harris and her longtime friend, B.M., decided to take pictures of each other in part because Harris had hoped to someday pose for Playboy. Five pictures that Harris took of B.M. formed the basis

for the charges against defendant and were identified as exhibit Nos. 7 through 11.

¶ 7    In exhibit No. 7, B.M., wearing only underwear, is leaning against a bed. Her breasts are fully exposed. In exhibit No. 8, B.M. is lying on the bed with one breast exposed and the other covered by a stuffed animal. In exhibit No. 9, B.M. is shown squatting against a closet door. She is wearing underwear in the picture and a portion of her left breast and nipple can be seen. Exhibit No. 10 shows B.M. wearing no clothes. She is leaning over the bed and both of her breasts can be seen. Exhibit No. 11 shows B.M. kneeling on the bed facing the camera. Her unclothed breasts can be seen.

¶ 8    Over defense counsel's objection, Harris testified to other photos that had been taken. Exhibit No. 12 showed B.M. seated in a chair with a blanket draped over the front of her body. Exhibit No. 13 showed a similar pose featuring Harris. Harris testified the pictures were taken with her digital camera and she sent them to B.M. over the Internet.

¶ 9    Again over defense counsel's objection, Harris testified to two pictures that were taken of her and B.M. by defendant in November 2007, after B.M. had turned 18. Exhibit No. 14 showed B.M. and Harris, both naked, squatting across from each other, their hands on the other's thighs. The side of B.M.'s right breast is visible as are both of Harris' breasts. Exhibit No. 15 showed B.M. and Harris, both naked and sitting next to each other. The breasts of both females were visible.

¶ 10    B.M. testified she was born in November 1989 and turned 18 in November 2007. She stated defendant was a youth advocate at her high school and they became acquainted as he was an advisor to her step club. B.M. testified she and defendant discussed Harris' desire to pose for Playboy in his office at the school. Defendant asked to see the "Playboy-type pictures" of B.M. She sent the photos in exhibit Nos. 7 through 11 to defendant via e-mail in June 2007 when she was a 17-year-old, high-school junior. Defendant indicated he received the pictures. Defendant and B.M. had a discussion about who took the photos, and B.M. sent him the pictures of her and Harris shown in exhibit Nos. 12 and 13. B.M. stated the photos in exhibit Nos. 14 and 15 were taken at defendant's house after she turned 18. B.M. later sent those pictures to defendant via e-mail.

¶ 11    On cross-examination, B.M. stated defendant never asked her to take pictures of herself naked. B.M. had told defendant that she and Harris had taken naked pictures in the past, and he wanted proof.

¶ 12    After the completion of B.M.'s testimony, the trial court instructed the jury that exhibit Nos. 7 through 11 pertained to the charges filed by the State. The court stated exhibit Nos. 12 and 13 were being offered for the limited purpose of showing the identification of the parties involved in taking the pictures and as evidence of the conversation that B.M. allegedly had with defendant. Exhibit Nos. 14 and 15 were offered for the limited purpose to show defendant's knowledge and possession of the various photographs.

¶ 13    Bloomington police detective Michael Burns testified he obtained a search warrant for defendant's Yahoo e-mail account. After speaking with B.M. about the photographs and believing them to be child pornography, Burns placed defendant under arrest. Defendant "continuously asked *** how he could be charged for pictures that were sent to him in an e-mail."

-3-

¶ 14 Defendant testified in his own behalf. He stated he was a youth advocate for Project Oz at a Normal high school in 2007 and became acquainted with B.M. Defendant stated he had no knowledge the June 2007 photos were taken and he did not request that they be taken. When discussing the need to find a coach for the drill team, B.M. told defendant about Harris and mentioned Harris wanted to pose for Playboy. Defendant testified he received the e-mail containing the five photos of B.M. He clicked on several of the images and thought they would be deleted. Instead, defendant stated the pictures "were moved to a folder as opposed to being deleted."

¶ 15 On cross-examination, defendant testified he remembered B.M. and Harris coming over to his residence in November 2007. He denied taking the photos of the two females in exhibit Nos. 14 and 15. Defendant later e-mailed the photos in exhibit Nos. 14 and 15 to Lenny Bell with the admonition that "this cannot leave your hands." Defendant stated he wanted Bell to hold onto them "if something were to happen." After police began investigating defendant's e-mail account in February 2008, defendant successfully deleted the photos sent by B.M.

¶ 16 Following closing arguments, the trial court instructed the jury that to find defendant guilty, it must find he knowingly possessed the image at issue, that he knew or should have known the person depicted was under the age of 18, and the image depicted "a lewd exhibition of the fully or partially developed breast of the child."

¶ 17 During deliberation, the jury sent a note asking for the definition of "lewd." The trial court proposed the following response from *People v. Lamborn*, 185 Ill. 2d 585, 592, 708 N.E.2d 350, 354 (1999):

"In determining whether a photo depicts a 'lewd' exhibition of the breasts of a female child, for purposes of a child pornography charge, you should consider the following six factors: (1) whether the focal point of the visual depiction is on the child's breasts; (2) whether the setting is sexually suggestive; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the depiction is intended or designed to elicit a sexual response in the viewer."

The State concurred in the proposal. Defense counsel suggested an alternate definition from *Lamborn* defining "lewd" as "obscene, lustful, indecent, lascivious, or lecherous." The court rejected defense counsel's proposal but added the following language over the State's objection: "Mere nudity without lewdness is not child pornography." The court also added "a photo need not involve all six of the factors set forth in the law to be a 'lewd' exhibition of the breasts of a female child, for purposes of a child pornography charge."

¶ 18 Thereafter, the jury sent a second note asking to receive a copy of the e-mails as well as a dictionary definition of "lewd." The trial court responded as follows: "The court has provided a legal definition of 'lewd.' Please rely on that instruction." The court brought the jurors back into the courtroom to view the e-mails.

¶ 19 Following further deliberation, the jury found defendant guilty on all five counts. During the polling of the jury, the second juror dissented from the verdicts. The trial court then ordered them to continue their deliberations. Sometime later, the jury returned guilty verdicts

on all five counts.

¶ 20    In February 2010, defendant filed a posttrial motion arguing, *inter alia*, the trial court erred in admitting evidence of the November 2007 incident where Harris and B.M. had their pictures taken at defendant's house and the verdict was the result of the jury's confusion over the definition of "lewd."

¶ 21    In April 2010, the trial court conducted a hearing on the posttrial motion. In denying the motion, the court stated the definition of "lewd" that was given to the jury was "about the most complete legal definition" that could be given based on the case law. The court also stated the uncharged pictures were relevant on the question of whether defendant knowingly possessed the charged images.

¶ 22    The trial court sentenced defendant to 30 months' probation and 90 days in jail. In May 2010, defendant filed a motion to reconsider sentence, which the court denied. This appeal followed.

¶ 23                                    II. ANALYSIS
¶ 24                      A. Jury Questions and the Definition of "Lewd"
¶ 25    Defendant argues he is entitled to a new trial based on the trial court's refusal of his proffered definition of "lewd" in response to two jury requests for the definition. The State argues defendant failed to preserve the issue by not raising it in his posttrial motion. While defense counsel did not specifically allege in the posttrial motion that the trial court erred in refusing to provide the jury with a dictionary definition of "lewd," the motion did raise matters involving the instructions that were given and the jury's alleged confusion given its requests for the definition of "lewd." Moreover, counsel argued at the hearing on the posttrial motion that the definition as provided in answer to the jury's question "did not give enough guidance to the jury" and "allowed too much speculation." The court, obviously aware of the issue, concluded the instruction was "about the most complete legal definition of 'lewd' " that it could come up with. We find defendant properly preserved this issue, and the plain-error doctrine is not implicated here.

¶ 26    "Jurors are entitled to have their questions answered." *People v. Reid*, 136 Ill. 2d 27, 39, 554 N.E.2d 174, 179 (1990). As a general rule, "the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of the law arising from facts about which there is doubt or confusion. [Citation.] This is true even though the jury was properly instructed originally. [Citation.] When a jury makes explicit its difficulties, the court should resolve them with specificity and accuracy [citations]." *People v. Childs*, 159 Ill. 2d 217, 229, 636 N.E.2d 534, 539 (1994). A court may, however, exercise its discretion and decline to answer a question from the jury in certain circumstances. *People v. Averett*, 237 Ill. 2d 1, 24, 927 N.E.2d 1191, 1204 (2010).

> "Appropriate circumstances include when the jury instructions are readily understandable and sufficiently explain the relevant law, when additional instructions would serve no useful purpose or may potentially mislead the jury, when the jury's request involves a question of fact, or when giving an answer would cause the trial court to express an opinion likely directing a verdict one way or the other." *Averett*, 237 Ill. 2d at 24, 927

N.E.2d at 1204.

¶ 27 In this case, the jury requested a definition of "lewd." Defense counsel requested the trial court utilize *Lamborn*, suggesting "lewd" be defined as "obscene, lustful, indecent, lascivious, or lecherous." The court denied the request, stating the six-factor test in *Lamborn* "more accurately states the law." The court also added the additional language from *Lamborn* that "a photo need not involve all six of the factors set forth in the law to be a 'lewd' exhibition of the breasts of a female child, for purposes of the child pornography charge" and "mere nudity without lewdness is not child pornography." After the court provided the additional language, the jury asked for the "dictionary definition of lewd." The court stated the jury had been given the legal definition and found that sufficient. The court directed the jury to rely on that instruction.

> "Determining the propriety of the trial court's response to a jury question accordingly requires a two-step analysis. First, we must determine whether the trial court should have answered the jury's question. We review the trial court's decision on this point for abuse of discretion. [Citation.] Second, we must determine whether the trial court's response to the question was correct. Because this is a question of law, we review this issue *de novo*. [Citation.]" *People v. Leach*, 2011 IL App (1st) 090339, ¶ 16, 952 N.E.2d 647, 652.

¶ 28 Here, it is clear the trial court had a duty to answer the jury's question. During the jury-instruction conference, the court anticipated the jury would seek assistance on the definition of "lewd." When the jury sought clarification on the definition, the court had a duty to provide the jury with specific and accurate guidance. As the court responded to the jury's questions, we find no abuse of discretion.

¶ 29 The question then becomes whether the trial court's responses were correct. According to section 11-20.1(a)(6) of the Criminal Code of 1961 (Code) (720 ILCS 5/11-20.1(a)(6) (West 2008)), a person commits the offense of child pornography who,

> "with knowledge of the nature or content thereof, possesses any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child *** whom the person knows or reasonably should know to be under the age of 18 *** in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection."

Section 11-20.1(a)(1)(vii) of the Code prohibits the possession of images in which a person under 18 years of age is "depicted or portrayed in any pose, posture or setting *involving a lewd exhibition* of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person." (Emphasis added.) 720 ILCS 5/11-20.1(a)(1)(vii) (West 2008).

> "Defining 'lewd' has proven somewhat problematic for courts. In *People v. Walcher*, 162 Ill. App. 3d 455, 460 (1987), the court, quoting Black's Law Dictionary, defined 'lewd' as ' "[o]bscene, lustful, indecent, lascivious, lecherous." ' *Walcher*, 162 Ill. App. 3d at 460, quoting Black's Law Dictionary 817 (5th ed. 1981). These terms, while synonymous, provide little concrete guidance. Relying on definitions like these would leave courts with an I-know-it-when-I-see-it approach, reminiscent of the United States

-6-

Supreme Court's attempts to define obscenity. [Citation.] Such an approach is constitutionally infirm. It is true that child pornography enjoys no protection under the first amendment. [Citation.] A definitional problem, however, does exist. In order for a court to determine whether an image is not protected, the court must first determine whether the content of the image fits within the boundaries of child pornography." *People v. Sven*, 365 Ill. App. 3d 226, 229, 848 N.E.2d 228, 231 (2006).

¶ 30  The supreme court has set forth six factors to consider in determining whether a photograph of a child constitutes "the lascivious or lewd exhibition of the genitals," including:

"(1) whether the focal point of the visual depiction is on the child's genitals; (2) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Lamborn*, 185 Ill. 2d at 592, 708 N.E.2d at 354.

"Nudity without lewdness is not child pornography." *Lamborn*, 185 Ill. 2d at 594, 708 N.E.2d at 355. The visual depiction of the minor need not involve all of the listed factors to be considered lewd. *Lamborn*, 185 Ill. 2d at 592, 708 N.E.2d at 355. Instead, "the determination of whether the visual depiction is lewd will involve an analysis of the overall content of the depiction, taking into account the age of the minor." *Lamborn*, 185 Ill. 2d at 592-93, 708 N.E.2d at 355.

¶ 31  As to the jury's first question on the definition of "lewd," we find the trial court's decision to instruct the jury on the six *Lamborn* factors, that nudity without lewdness is not child pornography, and that an image need not involve all of the listed factors to be considered lewd was proper. The court accurately stated the law and provided the jury with well-established factors to enable it to determine whether the images were lewd.

¶ 32  Defendant, however, argues the trial court should have provided the dictionary definition of "lewd" in response to the jury's second question. We disagree. The *Lamborn* factors were readily understandable and sufficiently explained the relevant law. Moreover, the dictionary definition could potentially mislead the jury or engender further confusion. The court in *Sven*, 365 Ill. App. 3d at 229, 848 N.E.2d at 231, noted the definition of "lewd" as being "[o]bscene, lustful, indecent, lascivious, [or] lecherous" "provide[d] little concrete guidance." (Internal quotation marks omitted.) Providing this definition would most likely cause the jury to request still more help from the dictionary. See *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) (noting "lascivious" is "a term which is less than crystal clear"); *Green v. United States*, 948 A.2d 554, 562 (D.C. 2008) (rejecting the idea that "to define 'lewd' adequately, the judge must use terms such as ' "lewd" means' or 'the definition of "lewd" is . . .' "). The court here properly exercised its discretion in declining to give the jury a circular dictionary definition of "lewd" when it had already given an instruction that meaningfully provided the jury with guidance on the issue.

¶ 33                                    B. Uncharged Images

¶ 34    Defendant argues he is entitled to a new trial based on the admission of uncharged images of the victim and Harris that were found in his e-mail account. We disagree.

¶ 35    "The term 'other-crimes evidence' encompasses misconduct or criminal acts that occurred either before or after the allegedly criminal conduct for which the defendant is standing trial." *People v. Spyres*, 359 Ill. App. 3d 1108, 1112, 835 N.E.2d 974, 977 (2005). "[O]ther crimes evidence may include acts which may not be a criminal offense." *People v. Davis*, 260 Ill. App. 3d 176, 190, 631 N.E.2d 392, 403 (1994).

¶ 36    "As a general rule, evidence indicating that a defendant committed prior bad acts is improper where its purpose is to demonstrate the defendant's propensity to commit crime." *Davis*, 260 Ill. App. 3d at 190, 631 N.E.2d at 402. Evidence of other bad acts is admissible, however, if the evidence "is relevant for any other purpose." *People v. Botsis*, 388 Ill. App. 3d 422, 442, 902 N.E.2d 1092, 1107 (2009). "Evidence is 'relevant' if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *People v. Roberson*, 401 Ill. App. 3d 758, 771-72, 927 N.E.2d 1277, 1289 (2010).

¶ 37    "Even if offered for a permissible purpose, such evidence will not be admitted if its prejudicial effect substantially outweighs its probative value." *People v. Dabbs*, 239 Ill. 2d 277, 284, 940 N.E.2d 1088, 1093 (2010). "The rationale for this rule is not that a defendant's bad character, as evinced by other bad acts, is irrelevant when he is charged with a crime. Rather, the rule is grounded in the concern that such evidence proves too much." *Dabbs*, 239 Ill. 2d at 284, 940 N.E.2d at 1093. Admission of evidence will have a "[p]rejudicial effect" if "the evidence in question will somehow cast a negative light upon a defendant for reasons that have nothing to do with the case on trial." *People v. Pelo*, 404 Ill. App. 3d 839, 867, 942 N.E.2d 463, 487 (2010). "In other words, the jury would be deciding the case on an improper basis, such as sympathy, hatred, contempt, or horror." *Pelo*, 404 Ill. App. 3d at 867, 942 N.E.2d at 487.

¶ 38    The admissibility of bad-acts evidence is a matter within the trial court's sound discretion, and that decision will not be overturned on appeal absent an abuse of that discretion. *Dabbs*, 239 Ill. 2d at 284, 940 N.E.2d at 1093. "A trial court abuses its discretion only when its decision is arbitrary, unreasonable, or fanciful or where no reasonable person would take the trial court's view." *Pelo*, 404 Ill. App. 3d at 864, 942 N.E.2d at 485.

¶ 39    B.M. testified she e-mailed five nude or semi-nude photos (exhibit Nos. 7 through 11) to defendant in June 2007. Defendant testified he thought he had deleted this e-mail but claimed he must have accidentally sent it to a personal folder. Harris and B.M. both testified that after B.M. turned 18, defendant used Harris' digital camera to take several nude photos of them (exhibit Nos. 14 and 15). Defendant placed exhibit Nos. 14 and 15 in the same personal folder in which he placed exhibit Nos. 7 through 11 and forwarded it to another individual.

¶ 40    Defendant concedes the State was entitled to rebut his claim that he accidentally sent exhibit Nos. 7 through 11 into a personal folder with evidence that he subsequently and

purposefully placed a second e-mail containing nude images of B.M. in the same folder. Defendant concedes this evidence was relevant to show he was familiar with his e-mail account and made it more likely that he intentionally retained the images in exhibit Nos. 7 through 11.

¶ 41     It should be noted the images in exhibit Nos. 14 and 15 do not depict child pornography. Although B.M. and Harris are shown naked, the images were taken when both were 18 years of age or older. Defendant, however, argues introducing the exhibit Nos. 14 and 15 images themselves added nothing to the inquiry, were of limited relevance, and created a high risk of unfair prejudice because the images were "overtly sexual" and suggested "same-gender sexuality," which a "substantial portion of the population still views *** as immoral."

¶ 42     Although the photos in exhibit Nos. 14 and 15 can be considered prejudicial, we find the prejudicial effect did not substantially outweigh the probative value of the images. The trial court limited the State to presenting two photos. The photos corresponded to the two females who partook in taking the photos or were the subjects of the other exhibits. They were not images of child pornography or pictures of females other than B.M. or Harris. Like the photos in exhibit Nos. 7 through 13, defendant placed the photos into a separate folder, which showed his knowledge of his e-mail account and his intent to retain the photos.

¶ 43     We also do not believe any prejudice was heightened by the testimony that defendant took the images in exhibit Nos. 14 and 15 or that they involved "same-gender sexuality." The State's evidence against defendant cannot be said to have shown he exploited the then adult B.M. into engaging in overtly sexual activity with another adult female. The State's closing argument did not attempt to show defendant lured B.M. into his house to take naked pictures but focused on his placing of the pictures into his personal folder. Moreover, defendant's claim the pictures showed B.M. in "overtly sexual activity" with another female, which could be found morally offensive by some, is not borne out by the photos. While B.M. and Harris are shown squatting naked and touching each other's thighs in exhibit No. 14 and topless in exhibit No. 15, the photos do not show B.M. and Harris kissing, fondling each other's sex organs or breasts, or otherwise engaging in sex acts. Defendant's claim that the photos exhibit "same-gender sexuality" and would thereby engender moral outrage leading to his conviction is nothing but sheer speculation.

¶ 44     Even if it was error to admit the two photos in exhibit Nos. 14 and 15, we would find the error harmless for the following reasons. After B.M. testified, the trial court instructed the jury that exhibit Nos. 7 through 11 constituted the evidence in support of the State's charges. The court also stated exhibit Nos. 14 and 15 were offered only for the limited purpose of showing defendant's knowledge and possession of the various photos at issue. During closing arguments, the State mentioned the photos in exhibit Nos. 14 and 15 to show defendant placed them in a personal folder that also contained the images he claimed to have deleted. After closing arguments, the court instructed the jury that evidence received for a limited purpose should not be considered for any other purpose. As any error was harmless, defendant is not entitled to a new trial.

¶ 45                                              C. Multiple Convictions

¶ 46        Defendant argues his simultaneous possession of five images in a single e-mail constituted a single offense and four of his five convictions for child pornography must be vacated. We agree.

¶ 47        In the case *sub judice*, the five bills of indictment alleged defendant possessed five different photos of B.M. that constituted child pornography. Each bill indicated the allegation was "separate and distinct from the act of possession set forth in the other counts of the indictment." The jury received separate issues instructions and separate guilty and not guilty forms for each count. The jury returned a guilty verdict on each count, and the trial court entered judgment on each one. At sentencing, defense counsel argued the five counts should merge into a single offense because they were committed "at the same time." The court sentenced defendant to concurrent probation terms for each count and assessed the mandatory minimum $1,000 fine for each count.

¶ 48        Defendant points out the State's evidence showed, *inter alia*, B.M. sent one e-mail, which displayed the five photos in exhibit Nos. 7 through 11 within the body of that e-mail and without the need for the recipient to take any further steps to view them. The State presented no evidence that defendant separately copied these images in five distinct steps upon receipt. Defendant argues the charges against him can only support a single conviction for possession and relies on our supreme court's decision in *People v. Carter*, 213 Ill. 2d 295, 821 N.E.2d 233 (2004).

¶ 49        In his motion to reconsider, defendant did not allege the trial court erred in imposing multiple judgments for a single offense. The State notes defendant failed to properly preserve the issue of his multiple convictions in a posttrial motion, thereby subjecting the issue to forfeiture. However, and as the State also points out, the issue involves the possibility of a surplus conviction and sentence, which affects the integrity of the judicial process and satisfies the second prong of the plain-error doctrine. *Carter*, 213 Ill. 2d at 299, 821 N.E.2d at 236.

¶ 50        In *Carter*, 213 Ill. 2d at 298, 821 N.E.2d at 235, the defendant was charged with four counts of unlawful possession of weapons by a felon based on his possession of two different handguns and the ammunition for those guns. The trial court found defendant guilty.

¶ 51        On appeal, the supreme court was "asked to determine whether multiple convictions can be entered for unlawful possession of weapons by a felon based on the simultaneous possession of two guns and the ammunition for those guns." *Carter*, 213 Ill. 2d at 299, 821 N.E.2d at 236. The court stated it must first interpret the statute in question to determine whether it "permits separate offenses to be charged for simultaneous possession." *Carter*, 213 Ill. 2d at 300-01, 821 N.E.2d at 236-37. If the statute permits multiple convictions for simultaneous possession, then the one-act, one-crime doctrine applies. *Carter*, 213 Ill. 2d at 301, 821 N.E.2d at 237.

¶ 52        While noting that statutory interpretation is a question of law entitled to *de novo* review, the supreme court set forth the familiar principles of statutory construction as follows:

        "When construing a statute, a court is required to ascertain and give effect to the intent of the legislature. [Citation.] 'The most reliable indicator of legislative intent is the

language of the statute, which, if plain and unambiguous, must be read without exception, limitation, or other condition.' [Citation.] Criminal or penal statutes must be strictly construed in the defendant's favor, 'and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute.' [Citation.]" *Carter*, 213 Ill. 2d at 301, 821 N.E.2d at 237.

¶ 53 The statute at issue in *Carter* provided as follows:

" '(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or *any firearm or any firearm ammunition* if this person has been convicted of a felony under the laws of this State or any other jurisdiction.' " (Emphasis in original.) *Carter*, 213 Ill. 2d at 301, 821 N.E.2d at 237 (quoting 720 ILCS 5/24-1.1(a) (West 1996)).

¶ 54 In applying the principles of statutory construction, the supreme court concluded "the statute neither prohibits nor permits the State to bring separate charges for the simultaneous possession of firearms and firearm ammunition." *Carter*, 213 Ill. 2d at 301, 821 N.E.2d at 237. In looking at the term "any" in the statute, the court found it "may be constructed to mean 'some,' 'one out of many' or 'an indefinite number.' " *Carter*, 213 Ill. 2d at 301, 821 N.E.2d at 237 (citing Black's Law Dictionary 94 (6th ed. 1990)). The court noted the State conceded the term "any" could mean either the singular or the plural, and when a criminal statute is capable of two or more constructions, "courts must adopt the construction that operates in favor of the accused." *Carter*, 213 Ill. 2d at 302, 821 N.E.2d at 237.

¶ 55 To determine whether the General Assembly intended for the simultaneous possession of weapons and ammunition to be the same offense, the supreme court indicated it had to determine the statute's " 'allowable unit of prosecution.' " *Carter*, 213 Ill. 2d at 302, 821 N.E.2d at 237 (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 220-21 (1952)). Because the use of the term "any" did not adequately define the " 'allowable unit of prosecution,' " the court found the statute ambiguous and required it to adopt a construction that favored the defendant. *Carter*, 213 Ill. 2d at 302, 821 N.E.2d at 237.

¶ 56 The supreme court noted it had "consistently held, where a statute is ambiguous, in the absence of a statutory provision to the contrary, simultaneous possession could not support multiple convictions." *Carter*, 213 Ill. 2d at 302, 821 N.E.2d at 237. Based on the facts before it, and "in the absence of a specific statutory provision to the contrary, the simultaneous possession of two firearms and firearm ammunition constituted a single offense, and [thus] only one conviction for unlawful possession of weapons by a felon could be entered." *Carter*, 213 Ill. 2d at 304, 821 N.E.2d at 238.

¶ 57 In the case at bar, section 11-20.1(a)(6) of the Code provides, in relevant part, as follows:

"A person commits the offense of child pornography who[ ]

* * *

*** with knowledge of the nature or content thereof, possesses *any* film, videotape, photograph or other similar visual reproduction or depiction by computer of any child *** whom the person knows or reasonably should know to be under the age of 18 *** engaged in any activity described in subparagraphs (i) through (vii) of

-11-

paragraph (1) of this subsection[.]" (Emphasis added.) 720 ILCS 5/11-20.1(a)(6) (West 2008).

Subparagraph (vii) describes images which "depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed *** female *** fully or partially developed breast of the child." 720 ILCS 5/11-20.1(a)(1)(vii) (West 2008).

¶ 58 We must first determine whether the child-pornography statute under the facts in this case permits separate convictions for simultaneous possession of multiple images of the same child. As noted by the supreme court, "the term 'any' has categorical meanings of 'any one of a kind,' 'any kind,' or 'any number.' " *Carter*, 213 Ill. 2d at 301-02, 821 N.E.2d at 237. Thus, the term "any" used in the child-pornography statute could be singular or plural. Whether the legislature intended for the simultaneous possession of child-pornography pictures to be the same offense or separate requires us to determine the statute's "allowable unit of prosecution."

¶ 59 We find the use of the term "any" in the child-pornography statute does not adequately define the "allowable unit of prosecution." The statute is therefore ambiguous, and we must construe the statute in favor of defendant. Like the scenario in *Carter*, where the statutory language is ambiguous and in the absence of a statutory provision to the contrary, the simultaneous possession of the images cannot support multiple convictions in this case.

¶ 60 The State argues the proper unit of prosecution is one count per photograph and not just one count per possession of child pornography without regard to the number of photographs possessed. In support of its contention, the State relies on a decision by the Supreme Court of Pennsylvania in *Commonwealth v. Davidson*, 938 A.2d 198 (Pa. 2007). In that case, the court found a person charged with possession of child pornography under Pennsylvania statutes could be subjected to individual counts and sentences for each item of child pornography possessed. *Davidson*, 938 A.2d at 219. There, the child-pornography statute provided:

"[I]t is a violation of the law for '[a]ny person who knowingly possesses or controls *any* book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material' which depicts a minor 'engaging in a prohibited sexual act or in the simulation of such act.' 18 Pa. C.S. § 6312(d)." (Emphasis added.) *Davidson*, 938 A.2d at 218-19.

After reviewing the statute, the Supreme Court of Pennsylvania found, in part, as follows:

"The General Assembly's use of the term 'any,' which could mean one or more items, suggests a lack of restriction or limitation. Further, all of the objects listed in the statute are singular, *e.g.*, a 'photograph' or a 'computer depiction,' meaning that each photograph or computer depiction constitutes a distinct occurrence of offensive conduct in violation of Section 6312(d). As the Superior Court correctly reasoned in *Koehler*, Section 6312(d) specifically criminalizes possession of any computer depiction, not possession of a computer hard drive which could contain an unknown quantity of images. [Citation.] The plain language of the statute evidences the intent of the General Assembly to make each image of child pornography possessed by an individual a separate, independent crime under Section 6312(d).

-12-

Furthermore, it is not difficult to discern why the General Assembly would target individual instances of possession. Each use of a minor to create a visual depiction of child pornography constitutes a separate and distinct abuse of that child, and thus represents an individual violation of the statute. As noted in *United States v. Esch*, 'the key element of the offense is the use [of] a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction of such conduct. . . . Each photograph depended upon a separate and distinct use of [a minor].' [Citation.] As the Superior Court noted below, each image of child pornography victimized each child and subjected the child to 'precisely the type of harm the statute seeks to prevent.' [Citation.] We conclude that each image of child pornography creates a permanent record of a child's abuse, which results in continuing exploitation of a child when the image is subsequently viewed." *Davidson*, 938 A.2d at 219.

¶ 61    While we agree with the reasoning of the Supreme Court of Pennsylvania as to why a legislature would target individual instances of possession of child pornography given the heinous nature of the crime and the resultant harm to children, we are bound to follow the rules of statutory construction espoused by our own supreme court. Moreover, as shown in the following paragraphs, the General Assembly has the power to authorize multiple convictions based on simultaneous possession of different images of child pornography by amending the statute.

¶ 62    The supreme court in *Carter* cited its previous decision in *People v. Manning*, 71 Ill. 2d 132, 374 N.E.2d 200 (1978), where the defendant was convicted of one count of burglary and two counts of possession of controlled substances. *Manning*, 71 Ill. 2d at 133, 374 N.E.2d at 200. The State argued the defendant committed two separate offenses of possession in that he knowingly possessed two types of controlled substances. *Manning*, 71 Ill. 2d at 134, 374 N.E.2d at 201. The defendant, however, argued the simultaneous possession of both controlled substances arose out of a single act of possession. *Manning*, 71 Ill. 2d at 134, 374 N.E.2d at 201. The supreme court found "in the absence of a statutory provision to the contrary, the simultaneous possession of more than one type of controlled substance, under the circumstances shown on this record, constituted a single offense, and only one sentence should have been imposed." *Manning*, 71 Ill. 2d at 137, 374 N.E.2d at 202.

¶ 63    Following the supreme court's decision in *Manning*, the General Assembly amended the Illinois Controlled Substances Act "expressly authorizing multiple convictions based on simultaneous possession of different drugs." *Carter*, 213 Ill. 2d at 303, 821 N.E.2d at 238; see also 720 ILCS 570/402 (West 2002) ("[a] violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act"). The court noted "the amendment demonstrates that the legislature knows how to authorize, specifically, multiple convictions for simultaneous violations of a single criminal statute." *Carter*, 213 Ill. 2d at 303, 821 N.E.2d at 238. After the *Carter* decision, the General Assembly amended the weapons statute at issue to provide "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1.1(e) (West 2008); see also *People v. Anthony*, 2011 IL App (1st) 091528-B, ¶ 9.

¶ 64    While we agree with the State that each photograph exploits the minor and adds to the

market, "it is for the legislature to ' "defin[e] what it desires to make the [allowable] unit of prosecution." ' " *Carter*, 213 Ill. 2d at 306, 821 N.E.2d at 239 (quoting *Manning*, 71 Ill. 2d at 137, 374 N.E.2d at 202, quoting *Bell v. United States*, 349 U.S. 81, 83 (1955)). As the statutory amendments post-*Manning* and *Carter* prove, if the General Assembly wants to authorize multiple convictions for child pornography based on simultaneous possession of images of the same minor displayed in a single e-mail, it knows how to do so. In the absence of such language, we must construe the statute in defendant's favor. Thus, as all five counts alleged the same conduct, we vacate counts II, III, IV, and V and remand for issuance of an amended sentencing judgment.

¶ 65                                    III. CONCLUSION

¶ 66       For the reasons stated, we affirm in part, vacate in part, and remand with directions. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.


¶ 67       Affirmed in part and vacated in part; cause remanded with directions.