NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210735-U

NO. 4-21-0735

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 16, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| ELAHE JAVADI, | ) | Circuit Court of |
| Petitioner-Appellee, | ) | McLean County |
| and | ) | No. 18D307 |
| AMIR MARMARCHI, | ) | |
| Respondent-Appellant. | ) | Honorable |
| | ) | Amy L. McFarland, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court did not err by refusing to review its final parenting plan
order at the time of the hearing on the remaining financial issues in the case.

(2) The trial court's maintenance award was neither unauthorized by statute nor an
abuse of discretion.

(3) The underlying contempt proceeding is not reviewable because the trial court
imposed no contempt sanction.

¶ 2    Respondent, Amir Marmarchi, appeals following the dissolution of his marriage to
petitioner, Elahe Javadi. He argues the trial court erred by (1) failing to review its parenting plan
order at a later hearing to resolve the parties' financial matters, (2) ordering that Elahe's
maintenance payments to him be directed toward mortgage payments on the former marital
residence, and (3) summarily sentencing him for direct criminal contempt without affording him
an opportunity to make a statement in allocution. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In July 2003, the parties were married in Iran. During the marriage, they resided in Illinois and had one child, N.M., born in August 2013. In August 2018, Elahe filed a petition for dissolution of marriage.

¶ 5        In July 2021, the trial court conducted hearings on the issues of parenting time and decision-making responsibilities. Elahe presented the testimony of several witnesses, and both parties also testified. At the conclusion of the hearings, the court stated it had concerns regarding Amir's "mental wellness" and found the evidence before it supported restricting his parental responsibilities pursuant to section 603.10 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/603.10 (West 2020)). Specifically, the court found Amir had engaged in conduct that seriously endangered N.M.'s mental, moral, and emotional health, and impaired her emotional development. It ordered Amir "to obtain a mental health assessment by a licensed clinical psychologist with a release to the guardian *ad litem*" and to continue with therapy as recommended by his counselor. The court allocated no in-person parenting time to Amir but permitted him to have contact with N.M. via "WhatsApp" for up to 15 minutes a day. The court otherwise allocated all parenting time and full parental decision-making authority to Elahe.

¶ 6        After the trial court detailed its findings and stated it had "conclude[d] [its] oral ruling," it asked whether either party had questions or needed clarification. The following colloquy then occurred between the court and Amir's counsel, Floyd Dailey:

             "MR. DAILEY: Just so that I'm clear, Your Honor, *** I believe the
             Court's ruling is that [Amir's] parenting time solely is right now 15 minutes per
             day on the WhatsApp?

             THE COURT: Correct.

MR. DAILEY: In terms then of filing a motion then to revisit or to modify the restrictions, has the Court set the matter for review, or is the Court just leaving that matter to be then motioned up appropriately?

THE COURT: I will set the matter to track along with the financial issues herein, and a review on the date of the financial trial, so that we can determine whether or not [Amir] has taken steps forward, and whether or not it may be appropriate to modify those restrictions."

¶ 7 On August 17, 2021, the trial court's written parenting plan order was filed, restricting Amir's parenting time and allocating all parenting time and parental decision-making authority to Elahe. The written order made no reference to review or modification.

¶ 8 Following the entry of the trial court's parenting order, Dailey was allowed to withdraw as Amir's legal counsel. Amir then represented himself throughout the remainder of the underlying proceedings.

¶ 9 On September 14, 2021, a status hearing was conducted in the matter via video conference. The record does not contain a transcript of the hearing. However, the trial court's docket entry states as follows: "[Elahe] appears by [counsel] via Zoom. [Amir] does not appear. [Amir] was in the waiting room but left prior to the hearing. Cause remains set for trial."

¶ 10 On November 17, 2021, the trial court conducted a hearing in the case on all remaining issues, including child support, maintenance, and the allocation of property and debts. At the outset of the hearing, Amir raised the issue of parenting time with N.M., and the following colloquy occurred:

"THE COURT: Well [Amir], you understand today we are not talking about parenting issues.

[AMIR]: You asked me to see a psychologist I have seen a psychologist. This is a letter from them showing compliance. You said last time you were going to consider my gaining access back to my child based on the outcome of this.

THE COURT: All right. So [Amir], today is scheduled for all remaining issues, all of the property and financial issues that remain in the divorce so that this 2018 case that was filed three years ago can be resolved and closed and there can be a judgment of dissolution to resolve the entirety of this case.

Um, you are correct that I did give you a pathway forward to be able to address the issue of your parenting time. You're absolutely correct. But that isn't what is scheduled for today. There would have to be a hearing, a motion and a hearing related to that. A letter is not going to be sufficient. You're going to need to have somebody come testify. But that is a different issue than what we are here today to do. Okay? We are here today to finalize this matter and distribute the property and the debts and calculate support."

¶ 11        At the hearing, both parties testified. Relevant to this appeal, evidence showed that during the marriage, the parties resided in a home located at 419 Warren Avenue in Normal, Illinois, and both were employed by Illinois State University (ISU). Elahe testified she and Amir worked in separate departments at ISU and that Amir had master's degrees in finance and economics, and a bachelor's degree in computer science. At the time the petition for dissolution of marriage was filed in August 2018, Elahe was earning approximately $96,000 per year, and Amir was earning approximately $38,600 per year.

¶ 12        After the parties separated in October 2017, Elahe purchased a residence located at 208 Keiser Drive in Normal while Amir continued to live at the Warren Avenue residence. In

February 2018, Amir filed for bankruptcy, resulting in all of his debts being discharged. In 2019, Amir stopped working for ISU and, thereafter, received unemployment benefits. Elahe testified Amir's employment records from ISU showed he received "high remarks" or "good reviews." Also, ISU "indicated that they would rehire him" and made employment offers that Amir did not accept. Elahe believed Amir had "not reapplied to ISU in order to reduce his income." Amir represented that he was applying for jobs but not spending as much time doing so as he had in the past.

¶ 13 Elahe testified that following the parties' separation, she paid the mortgages for both the Warren Avenue and the Keiser Avenue residences. At some point, Elahe "fell behind" on mortgage payments for the Warren Avenue residence. She asked Amir to assist her, but he did not do so. In 2020, foreclosure proceedings were initiated in connection with that residence. Elahe asserted that when the parties separated, they owed approximately $62,000 for the Warren Avenue residence. Since that time, their indebtedness had grown to over $77,000. Elahe submitted a document the parties signed "to modify the mortgage" on the Warren Avenue property. The document—signed by Elahe on May 27, 2021, and signed by Amir on June 29, 2021—identified the debt associated with that property as totaling $77,786.99.

¶ 14 In the foreclosure proceedings, the parties attended mediation and were required to make three monthly payments of $1307.05 to get caught up on their missed mortgage payments. Elahe testified she made those payments in March, April, and May 2021, and the foreclosure action was dismissed. Since that time, from June to November 2021, she had also been making monthly mortgage payments for the Warren Avenue residence of $653.39. According to Elahe, Amir had not made any payments toward the Warren Avenue residence since the foreclosure. Amir acknowledged having funds available "to take [his] house out of foreclosure" but not using them

- 5 -

for that purpose.

¶ 15 Elahe proposed that the trial court award the Warren Avenue residence to Amir but expressed concern that he would not make the mortgage payments for the property in the future. She noted her name was still on the mortgage for the property and missed payments had negatively impacted her credit in the past. Elahe asked the court to allow her to continue making mortgage payments for the Warren Avenue residence until it was refinanced or sold and to have her payments offset against her maintenance obligation to Amir. She also asked to receive a credit toward maintenance for past mortgage payments she made "to get the house out of foreclosure." Further, Elahe denied that she ever received any form of support from Amir and stated she believed it was unlikely that she would ever receive child support from him on a consistent basis.

¶ 16 The record reflects that during Amir's *pro se* cross-examination of Elahe, the trial court explained to Amir several times that he was "off track," attempting to address irrelevant matters, not following the court's instructions, and making improper comments. At least three times, the court warned Amir that he was close to being held in contempt before finding him in "direct criminal contempt for not following [the court's] direction." The record indicates Amir was taken into "custody" for approximately 10 minutes, during which court was in recess. Amir was then allowed to return to the courtroom and continue his cross-examination of Elahe.

¶ 17 At the conclusion of the hearing, the trial court allocated 60% of the parties' marital estate to Amir and 40% to Elahe. It specifically awarded Amir the Warren Avenue residence, which it valued at $130,000, and Elahe the Keiser Avenue residence, which it valued at $82,000. The court also ordered Amir to make an equalization payment of $43,108.74 to Elahe, which it found would result in Amir having net equity in the marital estate of $52,611.26, and Elahe having a net equity of $35,074.17.

¶ 18    The trial court noted Elahe's concession that Amir was entitled to maintenance. It determined Amir had the ability to make at least $38,640 per year and imputed that amount of income to him. Given Elahe's income of $96,000 per year, the court found Elahe had a maintenance obligation of $813.17 per month for a period of nine years and seven months.

¶ 19    The trial court calculated Amir's child support obligation at $518 per month, plus $66 for his share of insurance-related costs for the parties' child. However, it found Amir was "unlikely" to "affirmatively make child support payments on a monthly basis." As a result, the court subtracted Amir's monthly child support obligation from Elahe's monthly maintenance obligation, finding Elahe would then owe Amir "$229 per month as an offset." The court also ordered Elahe's maintenance obligation to be reduced by $7,841.49, based on the mortgage payments she made for the Warren Avenue residence after foreclosure proceedings were initiated. Additionally, the court ordered Amir to refinance or sell the marital residence within nine months, finding he previously failed to use funds available to him to pay the mortgage on the residence and Elahe had to make payments to protect her credit rating. Until the residence was refinanced or resold, the court ordered that Elahe would continue to make the monthly mortgage payments and stated as follows:

> "The mortgage payment currently being [$]653.39, that does exceed the maintenance amount of [$]229. And as such [Elahe] will be credited with her mortgage payments to reduce her overall maintenance obligation by $424 per month."

It stated that once the Warren Avenue residence was resold or refinanced, Elahe would pay Amir "$229 per month as and for maintenance."

¶ 20    The same date as the hearing, November 17, 2021, the trial court entered a

bifurcated judgment of dissolution of marriage, dissolving the parties' marriage and incorporating the parenting plan order into the judgment. On November 29, 2021, the court entered a supplemental judgment of dissolution of marriage, setting forth its orders, consistent with this oral ruling, with respect to property distribution, maintenance, and child support.

¶ 21    This appeal followed.

¶ 22    II. ANALYSIS

¶ 23    A. Accelerated Appeal Filing Deadline

¶ 24    Initially, we note that this is an accelerated appeal under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Under that rule, this court is required to issue its decision in an accelerated case within 150 days after the filing of the notice of appeal unless there has been "good cause shown." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Here, Amir's notice of appeal was filed in December 2021, and this court's disposition was due to be filed by May 18, 2022. That filing deadline has passed. However, we note that Amir was granted both an extension of time for the filing of his appellant's brief and leave to file a late reply brief. Additionally, oral argument was requested and held. Given Amir's motions before this court and the need to schedule and hold oral argument, we believe there is "good cause" for issuing our disposition in this case after the 150-day deadline.

¶ 25    B. Parenting Plan Order Review

¶ 26    On appeal, Amir first argues the trial court erred by failing to "review" the August 2021 parenting plan order at the November 2021 evidentiary hearing on financial issues. His argument suggests that the court's comments at the conclusion of the hearing on parenting issues provided for an automatic or *sua sponte* review of its ruling at the later hearing and did not require him to first file a motion with the court, requesting a modification.

¶ 27                                    1. *Jurisdiction*

¶ 28            Initially, Elahe challenges this court's jurisdiction to review the merits of Amir's

claim. She asserts the trial court's August 2021 parenting plan order was a complete and final

order. Elahe states that, pursuant to Illinois Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016),

such orders are independently appealable within 30 days of their entry, and she notes Amir did not

file a notice of appeal within that time frame. Alternatively, Elahe contends that the crux of Amir's

argument on appeal "is that there is an issue unresolved by the trial court," *i.e.*, the court's "review"

of the restrictions of Amir's parental responsibilities. She argues we lack jurisdiction to consider

"an unresolved issue which should be determined by the trial court."

¶ 29            Amir responds by agreeing that the trial court's August 2021 parenting plan order

was "a separate judgment under Rule 304(b)(6)." However, he emphasizes that his appeal concerns

"what the court did on November 17, 2021," by denying him "a chance to review the [parenting]

plan" before it was incorporated into the dissolution judgment.

¶ 30            "The Illinois Constitution confers on the appellate court jurisdiction to hear appeals

from all final judgments entered in the circuit court." *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 22,

69 N.E.3d 834 (citing Ill. Const. 1970, art. VI, § 6). "An order is final and appealable if it

terminates the litigation between the parties on the merits or disposes of the rights of the parties,

either on the entire controversy or a separate part thereof." (Internal quotation marks omitted.)

*In re Marriage of Gutman*, 232 Ill. 2d 145, 151, 902 N.E.2d 631, 634 (2008). An appeal is initiated

by the timely filing of a notice of appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). A notice of appeal

is timely when it is filed "within 30 days after the entry of the final judgment appealed from, or, if

a timely posttrial motion directed against the judgment is filed, *** within 30 days after the entry

of the order disposing of the last pending postjudgment motion directed against that judgment or

order." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 31    Additionally, a final judgment that does not dispose of the entire proceeding is generally appealable only if the trial court has made a written finding "that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (Mar. 8, 2016). However, pursuant to Illinois Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016), "a custody or allocation of parental responsibilities judgment" is appealable without such a finding. "In other words, a permanent custody order is a final order, appealable without regard to the pendency of remaining issues in the dissolution proceeding." *In re Marriage of Harris*, 2015 IL App (2d) 140616, ¶ 16, 35 N.E.3d 1135 (noting the committee comments to Rule 304(b)(6) reflect that its applicability is limited to permanent custody determinations rather than temporary or interim orders).

¶ 32    As argued by Elahe, Rule 304(b)(6) provides for appeals from final judgments that allocate parental responsibilities. However, in this case, Amir does not challenge the propriety of the trial court's August 2021 parenting plan order or the proceedings that resulted in that order. Instead, he challenges the court's failure to revisit its prior ruling at the November 17, 2021, hearing on financial matters, *i.e.*, the court's refusal on that date to "review" the restrictions it placed on his parental responsibilities. We note that at the conclusion of the November 17 hearing, the court resolved all of the remaining issues in the parties' dissolution case that were then pending. There was nothing further to be litigated and no issue left unresolved. The court's written bifurcated and supplemental dissolution judgments followed with the former being filed the same date as the hearing and the latter being filed on November 29, 2021. On December 17, 2021, Amir timely filed his notice of appeal.

¶ 33    Pursuant to Rule 303(a), we have jurisdiction to review the final judgment of the trial court, as well as the proceedings from which it resulted. Those proceedings include the court's

refusal to conduct an automatic or *sua sponte* "review" of its restrictions on Amir's parental responsibilities.

¶ 34                                    2. *Merits of the Appeal*

¶ 35        On appeal, Amir argues the trial court's comments at the time it orally set forth its ruling on parenting issues provided for an automatic or *sua sponte* "review" of its order at the later hearing, specifically the restrictions the court placed on his parental responsibilities under section 603.10 of the Act (750 ILCS 5/603.10 (West 2020)). Amir asserts the court's oral pronouncement of its ruling controlled over its later written order, which did not contain any "review" provision. See *People v. Roberson*, 401 Ill. App. 3d 758, 774, 927 N.E.2d 1277, 1291 (2010) ("When the oral pronouncement of the court and the written order conflict, the oral pronouncement of the court controls."). Thus, he maintains the court erred by failing to abide by its oral pronouncement at the November 17, 2021, hearing. To support his argument that the court ordered a "review" of its parenting plan order, Amir points to the following colloquy between his counsel and the court at the conclusion of the hearing on parenting issues:

> "MR. DAILEY: In terms then of filing a motion then to revisit or to modify the restrictions, has the Court set the matter for review, or is the Court just leaving that matter to be then motioned up appropriately?
>
> THE COURT: I will set the matter to track along with the financial issues herein, and a review on the date of the financial trial, so that we can determine whether or not [Amir] has taken steps forward, and whether or not it may be appropriate to modify those restrictions."

¶ 36        Initially, we find the issue presented by Amir on appeal concerns the trial court's interpretation and application of its own prior order. We note "the trial court is in the best position

to interpret its own orders and as such a court's interpretation of its own order should not be reversed unless the record clearly shows an abuse of discretion." (Internal quotation marks omitted.) *Wilson v. Humana Hospital*, 399 Ill. App. 3d 751, 762, 926 N.E.2d 821, 831 (2010). "Even if the orders are unclear on review, deference to the court's interpretation of its order is warranted." *Board of Trustees of Community College District No. 508 v. Rosewell*, 262 Ill. App. 3d 938, 965, 635 N.E.2d 413, 434 (1992). "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Haage v. Zavala*, 2021 IL 125918, ¶ 40, 183 N.E.3d 830.

¶ 37     Here, at the November 17, 2021, hearing, Amir raised the issue of the trial court's August 2021 parenting order and the restrictions on his parenting responsibilities. However, the court refused to address parenting issues at that time, finding the matter was scheduled for a hearing on only the remaining financial issues in the case. The court acknowledged that it previously gave Amir "a pathway forward to be able to address the issue of [his] parenting time," but indicated the matter had to be "scheduled" for a hearing on that date and that Amir needed to file "a motion."

¶ 38     Contrary to Amir's assertions on appeal, the record does not establish that the trial court "merely forgot" about a prior order for "review" by the time it conducted the November 17 hearing. Rather, it shows a determination by the court that its previous ruling in the case did not provide for an automatic "review" of parenting issues. The court's comments reflect an intention that any "review" or modification proceeding would first have to be initiated by Amir through the filing of a motion.

¶ 39     Here, we do not dispute that the trial court's emphasized comments confused the issues in the case by suggesting that the court would *sua sponte* revisit parenting issues at the

November 17 hearing. Ultimately, however, the comments were made after the court had concluded the oral pronouncement of its ruling. The comments were not part of the court's ruling but made in response to a question by Amir's counsel. Neither the court's oral ruling nor its written order otherwise referenced an automatic or *sua sponte* review of the court's order. Given the circumstances presented, we find no abuse of discretion by the court in the way in which it interpreted and applied its August 2017 parenting plan order.

¶ 40    Moreover, even assuming the trial court's oral ruling did provide for an automatic "review" of restrictions it imposed on Amir's parental responsibilities, we find the Act does not provide authority for such a proceeding. "The fundamental rule of statutory construction is to ascertain and effectuate the legislature's intent." *Municipal Trust & Savings Bank v. Moriarty*, 2021 IL 126290, ¶ 18, 183 N.E.3d 146. "The plain language of the statute remains the best indication of this intent." *Id.* Further, issues of statutory interpretation present questions of law and are subject to *de novo* review. *Id.*

¶ 41    Section 603.10 of the Act provides authority for the restriction of parental responsibilities based upon a parent's conduct. 750 ILCS 5/603.10 (West 2020). It states:

> "After a hearing, if the court finds by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development, the court shall enter orders as necessary to protect the child." *Id.* § 603.10(a).

"Orders necessary to protect a child may include, *inter alia*, a reduction in parenting time, supervision, and/or a requirement to complete a treatment program for behavior that served as the basis for restricting parental responsibilities." *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 55, 109 N.E.3d 942.

¶ 42    Section 603.10(b) of the Act also provides for "modification" of an order restricting parental responsibilities. 750 ILCS 5/603.10(b) (West 2020). It states as follows:

"The court may modify an order restricting parental responsibilities if, after a hearing, the court finds by a preponderance of the evidence that a modification is in the child's best interests based on (i) a change of circumstances that occurred after the entry of an order restricting parental responsibilities; or (ii) conduct of which the court was previously unaware that seriously endangers the child. In determining whether to modify an order under this subsection, the court must consider factors that include, but need not be limited to, the following:

(1) abuse, neglect, or abandonment of the child;

(2) abusing or allowing abuse of another person that had an impact upon the child;

(3) use of drugs, alcohol, or any other substance in a way that interferes with the parent's ability to perform caretaking functions with respect to the child; and

(4) persistent continuing interference with the other parent's access to the child, except for actions taken with a reasonable, good-faith belief that they are necessary to protect the child's safety pending adjudication of the facts underlying that belief, provided that the interfering parent initiates a proceeding to determine those facts as soon as practicable." *Id.*

¶ 43    Here, consistent with the provisions of section 603.10 of the Act, the trial court made the requisite factual determination and then entered orders aimed at protecting N.M. Following the entry of the court's order restricting Amir's parental responsibilities, the proper

course for revisiting that order was through a modification proceeding as set forth in section 603.10(b) of the Act. Nothing in the plain language of the Act provides authority for an automatic "review" by the court of a final order on parenting restrictions, which—as Amir contends on appeal—would be based on "different standards" than the ones outlined in section 603.10(b). We note Amir fails to set forth any statutory basis for the "review" proceeding he contends was required in the underlying case. Nor does he define the "different standards" that would apply to such proceeding.

¶ 44 On appeal, Amir also characterizes the trial court's August 2021 parenting plan order as a "temporary order." He suggests that because the order was only temporary, it was subject to "fine-tun[ing]" by the court, *i.e.*, review, prior to the entry of the dissolution judgment. We disagree with Amir's characterization and find the court's August 2021 parenting plan order was a complete and final order.

¶ 45 "In determining when a judgment or order is final, one should look to its substance rather than its form." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 24, 53 N.E.3d 1. The finality of an order presents an issue of law and is subject to *de novo* review. *In re A.H.*, 207 Ill. 2d 590, 593, 802 N.E.2d 215, 217 (2003).

¶ 46 In this instance, the record reflects the court conducted a full evidentiary hearing in July 2021 directed at the allocation of the parties' parental responsibilities. At the conclusion of the hearing, the court orally pronounced its ruling, allocating all parenting time and decision-making to Elahe and restricting Amir's parental responsibilities. The court fully explained its ruling and, in August 2021, entered a written order that was consistent with its oral ruling. At that time, there was no further evidence to present, and the court had fully resolved the pending parenting issues in the case. Nowhere in its oral pronouncement did the court indicate its

- 15 -

order was temporary. Accordingly, we find the substance of the court's parenting order, as reflected in both its oral pronouncement and its written order, establishes that the court was entering a final determination of the parties' parental responsibilities.

¶ 47 Amir argues the trial court's comments regarding "review" at the conclusion of the hearing on parenting issues reflect the court's intention that its parenting plan order was only temporary. Initially, the fact that the court contemplated a later modification or review of its order based upon a change in circumstances does not require a finding that the order was a temporary one. In fact, modification of parenting restrictions is always permissible based upon a change in circumstances and in the best interest of the child. See 750 ILCS 5/603.10(b) (West 2020). Additionally, as already discussed, Amir's view of the court's comments conflict with the court's own interpretation of its order, which is entitled to deference. As stated, the court's comments were not part of its oral pronouncement of its ruling, and alone, they do not warrant a finding that the court's parenting plan order was a temporary order.

¶ 48 Additionally, to the extent Amir suggests the August 2021 written order was nonfinal because it was later incorporated into the November 17, 2021, bifurcated dissolution judgment, we disagree. As set forth above, the substance of the trial court's order reflects its finality. Moreover, that substance was not altered because the order was incorporated into the dissolution judgment three months after it was originally entered. See *Harris*, 2015 IL App (2d) 140616, ¶¶ 14-17 (finding a written child-custody order "was an independently appealable final order under Rule 304(b)(6)" based on the substance of the order even though the trial court had described it as a " 'temporary' " order and required its incorporation into a later-filed dissolution judgment).

¶ 49 Here, Amir had, and continues to have, the ability to seek modification of the trial

- 16 -

court's August 2021 parenting order pursuant to section 603.10(b) of the Act. However, at no point during the underlying proceedings did he file a motion to modify and provide notice of his intention to have the matter addressed. Accordingly, we find the trial court committed no error in refusing to address the restriction of Amir's parenting responsibilities at the November 2021 hearing on financial matters.

¶ 50                                    C. Maintenance

¶ 51                           1. *Mortgage Payments as Maintenance*

¶ 52         On appeal, Amir next argues the trial court erred by ordering Elahe to pay the mortgage on the Warren Avenue residence as maintenance payments. He asserts the Act does not "allow a trial court to allocate how a party was to have their maintenance payments used."

¶ 53         Whether the Act provides authority for the trial court's action is a matter of statutory interpretation. Again, "[t]he fundamental rule of statutory construction is to ascertain and effectuate the legislature's intent." *Moriarty*, 2021 IL 126290, ¶ 18. "The plain language of the statute remains the best indication of this intent." *Id.* Further, issues of statutory interpretation present questions of law and are subject to *de novo* review. *Id.*

¶ 54         Section 504 of the Act governs the trial court's award of maintenance. 750 ILCS 5/504 (West 2020). It provides that the court "may grant a maintenance award for either spouse in amounts and for periods of time as the court deems just." *Id.* § 504(a). Maintenance may be paid from income or property. *Id.* Additionally, the Act sets forth several relevant factors for consideration, such as "the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage." *Id.* § 504(a)(1). A court may also consider "any other factor that [it] expressly finds to be just and

- 17 -

equitable." *Id.* § 504(a)(14).

¶ 55 Under the Act, "[i]ssues of maintenance and property distribution are interrelated and considered together." *In re Marriage of Underwood*, 314 Ill. App. 3d 325, 328, 731 N.E.2d 1003, 1006 (2000). Like with maintenance, the Act provides that a court may "make such judgments affecting the marital property as may be just." 750 ILCS 5/503(i) (West 2020).

¶ 56 Here, although Amir challenges the trial court's characterization of mortgage payments on the Warren Avenue residence as maintenance, he fails to cite any authority establishing error by the court. Further, in his brief, he acknowledges a trial court's authority to allow "setoffs to maintenance obligations" but contends the court may only do so in a "post-judgment contempt/enforcement action." However, Amir provides no basis for distinguishing between a maintenance obligation the court has previously set and one that it established for the first time.

¶ 57 In his reply brief, Amir asserts "[t]here is no inherent right in equity to set off one demand against another." He cites *Bank of Chicago-Garfield Ridge v. Park National Bank*, 237 Ill. App. 3d 1085, 1091, 606 N.E.2d 72, 76 (1992), involving a chancery suit where one party unilaterally withheld funds that admittedly belonged to another party in satisfaction for an alleged debt. However, Amir provides no analysis regarding how this case pertains to a court's authority under the Act in a dissolution case when distributing marital property and awarding maintenance. The case authority he cites does not address the Act's provisions and does not support his claim that the trial court acted without authority in characterizing Elahe's mortgage payments as maintenance.

¶ 58 As indicated above, the Act authorizes the trial court to grant maintenance "in amounts and for periods of time as the court deems just" (750 ILCS 5/504(a) (West 2020)) and

also make judgments affecting marital property "as may be just" (*id.* § 503(i)). In this case, the record shows the Warren Avenue residence was the parties' former marital residence. The mortgage on the property was under the name of both Amir and Elahe, but it had been Amir's primary residence since the parties separated. When distributing the marital property in the case, the trial court awarded the Warren Avenue residence to Amir and ordered him to "assume[ ] all debts thereon." It also ordered him to attempt to refinance the property so as to remove Elahe's name "from the note and the mortgage within nine *** months." In the event Amir was unable to refinance, the court ordered the property listed for sale.

¶ 59      The trial court further ordered that Elahe would continue to make the mortgage payments on the property until it was refinanced or sold. The court characterized such payments as maintenance payments. Additionally, it held that because the mortgage payments exceeded Elahe's monthly maintenance obligation, she was entitled to receive a credit for her payments that would reduce her overall maintenance obligation.

¶ 60      The record indicates the basis for the trial court's order that Elahe continue paying the mortgage for the Warren Avenue residence was the court's finding that Amir was unlikely to do so. When setting forth its oral ruling in the matter, the court noted that Amir had failed to use available funds to assist with mortgage payments in the past and that Elahe had been making the payments to protect her credit rating. Evidence at the hearing on financial matters showed that Amir was voluntarily unemployed or underemployed during the dissolution proceedings. The record also reflects that foreclosure proceedings were initiated in connection with the Warren Avenue property after the parties separated and that Elahe made payments to catch up on missed payments. She testified that although she requested assistance from Amir, he did not contribute to the mortgage payments on the residence. Amir acknowledged having available funds but not

assisting with payments.

¶ 61 Notably, on appeal, Amir does not challenge the trial court's factual findings or argue that the record supports a different conclusion than the one reached by the court. We find the court's factual determinations support its allocation of property and award of maintenance and Amir has failed to establish the court's actions were unauthorized by the Act.

¶ 62 2. *Additional Maintenance Challenges*

¶ 63 Regarding maintenance, Amir raises two additional challenges to the trial court's order. First, he suggests that the court's maintenance credit to Elahe of $7841.49 for payments she made in connection with the Warren Avenue property after it was in foreclosure were "problematic." He asserts "it's presumed" that such payments increased the equity on the Warren Avenue property and that the increase in equity factored into the court's award of an equalization payment, resulting in a "double-dip" that allowed Elahe to get the benefit of both a higher equalization payment and a reduction in her maintenance obligation.

¶ 64 "[T]he propriety of a maintenance award is within the discretion of the trial court and the court's decision will not be disturbed absent an abuse of discretion." *In re Marriage of Schneider*, 214 Ill. 2d 152, 173, 824 N.E.2d 177, 189 (2005). "The party seeking reversal of a maintenance award bears the burden of showing the trial court abused its discretion." *In re Marriage of Nord*, 402 Ill. App. 3d 288, 292, 932 N.E.2d 543, 548 (2010). Further, "[a] trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court." *Schneider*, 214 Ill. 2d at 173.

¶ 65 Here, at the November 2021 hearing, testimony and evidence was presented regarding the value of the Warren Avenue property, the debt associated with that property, and payments Elahe made during dissolution proceedings in connection with that property. However,

Amir cites to no portion of the appellate record aside from the trial court's dissolution judgment to support his claim that the court allowed Elahe an improper "double-dip." He presents a conclusory argument that lacks a reasoned analysis of the issue and, as a result, has forfeited his claim of error. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (providing that an appellant's argument "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" and "[p]oints not argued are forfeited").

¶ 66       Forfeiture aside, we note Amir also asserts that the record on appeal is "unclear" as to whether the trial court improperly allowed Elahe a "double-dip" because an "assets and liabilities exhibit referenced in the [court's] order" is absent from the record. We note, however, that it is an appellant who "has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). In the absence of a complete record on appeal, we will "presume[ ] that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Id.* at 392. Doubts arising from the alleged incompleteness of the record in this appeal must be resolved against Amir.

¶ 67       Second, Amir contends that evidence presented at the November 2021 hearing established that property taxes were "rolled into the mortgage" on the Warren Avenue property. He asserts that because taxes fluctuate, the amount Elahe was obligated to pay for maintenance was improperly turned "into a potential moving target." We disagree.

¶ 68       Initially, the portion of the record to which Amir cites to support his argument does not establish that the mortgage payment amount set forth in the trial court's dissolution judgment—$653.39—included an amount owed for property taxes. At most, the testimony he cites indicates a possibility that amounts owed for property taxes were encompassed within the approximate

$15,000 increase in debt on the property that occurred during the dissolution proceedings. Additionally, the trial court set Elahe's maintenance obligation at a fixed amount, and her payment of the mortgage for the Warren Avenue residence was intended to be only temporary. In the event that payments associated with the mortgage fluctuated during the limited time frame provided in the dissolution judgment, the amount of overpayment or underpayment of any credit could easily be determined. Under these circumstances, we find Amir has failed to establish an abuse of the court's discretion.

¶ 69                                    D. Criminal Contempt

¶ 70          Finally, on appeal, Amir argues the trial court violated his due process rights by sentencing him for direct criminal contempt without affording him an opportunity to make a statement in allocution. He asserts that although an appeal from an order of contempt is moot where the contemnor has served his or her sentence (*In re J.L.D.*, 178 Ill. App. 3d 1025, 1030, 534 N.E.2d 190, 193 (1989)), we may consider his challenge to the underlying contempt proceedings under the public-interest exception to the mootness doctrine.

¶ 71          Here, we find it unnecessary to address either the mootness doctrine or its recognized exceptions because the record fails to reflect the trial court ever sentenced Amir for contempt. We note a contempt proceeding "is an original special proceeding, collateral to and independent of, the case in which the contempt arises." *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 172, 429 N.E.2d 483, 486 (1981). Further, "[a] contempt order that does not impose sanctions is not final and not reviewable." *In re Estate of Hayden*, 361 Ill. App. 3d 1021, 1026, 838 N.E.2d 93, 98 (2005).

¶ 72          In this instance, the record shows that during the hearing on financial matters, the trial court found Amir in direct criminal contempt, stating as follows:

"THE COURT: Can you please take Mr. Marmarchi into custody at this time?

Mr. Marmarchi, I'm finding you in direct criminal contempt for not following my direction.

MR. MARMARCHI: Call me lazy refusing jobs—

(MR. MARMARCHI IS TAKEN INTO CUSTODY.)

THE COURT: We'll take about ten minutes.

MS. OGAR [(ELAHE'S ATTORNEY)]: That's fine.

(RECESS.)

THE COURT: All right. Bring him back."

Once Amir was returned to the courtroom, a further discussion occurred between him and the court regarding Amir's conduct. Following that discussion, Amir resumed his cross-examination of Elahe, and the issue of his criminal contempt was not further addressed below.

¶ 73       Although the trial court found Amir in direct criminal contempt for not following its direction, the court did not impose any sanction upon him based on his contemptuous conduct. The court did order Amir taken "into custody"; however, that order preceded the court's contempt determination. Significantly, following the court's adjudication of contempt, no punishment was imposed. The court simply stated, "We'll take about ten minutes." As noted above, Amir returned to the courtroom, the court cautioned him regarding his behavior, and the proceedings resumed. Thus, under the circumstances presented, Amir's challenge to the underlying contempt proceedings is not reviewable, and we do not consider it. *Id.*

¶ 74                               III. CONCLUSION

¶ 75       For the reasons stated, we affirm the trial court's judgment.

¶ 76          Affirmed.